June, 1897.]                Argument of Counsel.

[No. 2558.  Decided June 22, 1897.]

R. C. BISHOP, *Appellant*, v. G. W. AVERILL *et ux.*, *Respondents*.

WITNESS — CROSS-EXAMINATION — BROKERS — ACTION FOR COMMISSION — INSTRUCTIONS — SUFFICIENCY OF COMPLAINT — CONTRACTS.

Where a defendant in an action has been called as a witness by the adverse party for the purpose of proving a matter, it is prejudicial error for the court to allow the defendant's attorney, under the guise of cross-examination, to go into the whole subject of his defense by propounding to the defendant questions which are leading, self-serving and suggestive.

In an action by a broker to recover his commission for the sale of a mine which was to be paid him monthly until payment in full of his commission of $10,000, in proportion to a certain percentage of the gross earnings of the mine, which his principal was to receive upon the purchase price for a period of three years, unless sooner paid in full, and which contract between seller and purchaser had been abrogated and a new one entered into, under which payment of commission was refused, it is error for the court to charge in effect that plaintiff cannot recover unless the jury find that in the usual course of business the purchaser would have fully paid the purchase price and that plaintiff would have received the full amount of his commission but for the subsequent contract, since plaintiff had a right to have the contract continue in force the full period of three years and to receive his percentage of his principal's share.

In such an action, a charge that the whole question is one of fraud, and that unless defendants made the subsequent contract of sale with the dishonest and corrupt purpose of preventing plaintiff from getting his commission due under the original contract, he could not recover, is erroneous.

After judgment, and in the absence of a demurrer, a complaint should be liberally construed.

A party to a contract cannot disable himself from complying with any condition, and thereby derive any benefit or escape any liability.

Appeal from Superior Court, Spokane County.—Hon. WALLACE MOUNT, Judge.  Reversed.

14—17 WASH.

*Danson & Huneke,* for appellant.

In the case at bar, defendants had agreed with plaintiff that he should during three years have 15.3 per cent. of defendants' share of the output of the mine, to be paid through the Thomas Cruse Savings Bank. After one year had elapsed, defendants stopped all further payments. They then placed it beyond their power to fulfill their contract, hence are liable for the whole. Clark, Contracts, § 272; Bishop, Contracts, § 690; *Wolf v. Marsh,* 54 Cal. 228; *Dill v. Pope,* 29 Kan. 289; *Tracy v. Gunn,* 29 Kan. 508; *Seipel v. International Life Ins. Co.,* 84 Pa. St. 47; *Hinckley v. Pittsburgh Steel Co.,* 121 U. S. 264; *Reusens v. Mexican Nat. Const. Co.,* 22 Fed. 522; *Lovell v. St. Louis Mutual Life Ins. Co.,* 111 U. S. 264; *Reichenbach v. Sage,* 13 Wash. 264 (52 Am. St. Rep. 51).

*William T. Stoll,* for respondents:

The buyer had violated and forfeited his contract, and the transaction mentioned in paragraph nine of the complaint was a new and independent transaction, separate and distinct from that referred to in the complaint. It was plaintiff's duty to effect a sale, and having negotiated a contract of sale it was his duty to see that the contract was performed. A violation of that contract justified the defendants in selling the property to any other person, even to the same person with whom plaintiff had negotiated with in the first instance. *Rees v. Spruance,* 45 Ill. 308; *Earp v. Cummins,* 93 Am. Dec. 718; *Atwater v. Lockwood,* 39 Conn. 45; *Walker v. Tirrell,* 101 Mass. 257 (3 Am. Rep. 352); *McPhail v. Buell,* 25 Pac. 266.

The opinion of the court was delivered by

GORDON, J.—This action was brought to recover the balance of a commission claimed by plaintiff for selling a

certain mining property for defendants.  The cause was tried before a jury and the trial resulted in a verdict and judgment for the defendants.  From the record it appears that in the spring of 1895 the defendants and one Bang-hart owned certain mining property in Montana known as the Golden Cloud mining property, which they were desirous of selling, and for that purpose authorized the plaintiff and George Walker to sell the same for the pur-chase price of $75,000, and in consideration of their doing so, agreed to pay them $10,000 as a commission for making the sale.  Thereafter a purchaser was found by plaintiff and his associate who entered into a written agreement with Banghart and the defendants of date April 8, 1895, under the terms of which, in consideration of $1,000, an option was given the other party to the agreement until April 15, 1895, to purchase the property at a price of $75,000, of which $10,000 was required to be paid on or before April 15, 1895, and if so paid the purchaser was to be entitled to the immediate possession of the property and everything connected therewith.  As a part of the same transaction deeds of conveyance were executed and deposited with the Thomas Cruse Savings Bank of Helena, Montana, to be delivered to the purchaser on payment of the balance of the purchase price, to-wit, $65,000.  The agreement further provided that all payments were to be made through said bank.  The purchaser was required to operate the mines continuously at his own expense until the pur-chase price was paid.  It required the balance of the pur-chase price to be paid within three years after April 15, 1895.  This balance was, under the terms of the agreement, to be paid

"By deposits in the Thomas Cruse Savings Bank of Helena, Montana, to the credit of the said G. W. Averill, of thirty-five (35) per cent. of the gross returns of the

mines and mills hereinbefore described, until the full balance is paid—that is to say that the thirty-five (35) per cent. of the gross returns shall aggregate the full sum of sixty-five thousand dollars within three years from the date of delivery of possession."

The agreement further provided that

" Unless the said party of the second part shall elect to pay the said sixty-five thousand dollars in cash, there shall be no obligation on his part to pay the same, unless such payment is made by the deposit of thirty-five per cent. of the gross returns as above described;"
and, also,

" Nothing herein contained shall be considered as obligating said party of the second part to pay said balance of sixty-five thousand dollars, except as the same is to be paid by means of the said thirty-five per cent. of the said gross returns, and in case such balance of sixty-five thousand dollars is not paid within the said three years from the date of such delivery as aforesaid, either by such election and payment in cash, or by the deposits of thirty-five per cent. of the gross returns as aforesaid, then and in that event the said party of the second part, is, at the end of the said three years, to surrender the said property and the whole thereof to the said parties of the first part in as good condition as reasonable use and wear thereof will permit."

The closing clause of the agreement was as follows:

" It is further provided that the terms and provisions of the within and foregoing contract shall apply to the successors and assigns of the parties thereto in the same manner as to the parties themselves, *and time shall be of the essence hereof.*"

The party of the second part named in this agreement was Eugene M. Sanger, who was in fact acting for and subsequently assigned all of his rights in and under the contract to Abram T. Kerr of the state of New York. Within the time fixed by the agreement, Kerr paid the sum

of $10,000 and entered into possession of the property in accordance with the terms of the contract. At about that time Banghart assigned all of his interest in the contract to the respondents in this action (defendants below) who assumed Banghart's liability to the plaintiff and Walker for the commission, and Walker assigned to the appellant all his right and share in such commission. After Kerr had paid the $10,000 and gone into possession of the mining property, the defendant G. W. Averill, acting on behalf of himself and wife, entered into a written agreement with appellant as to the manner in which the $10,000 commission was to be paid. The agreement refers to the contract of purchase and recites that the said Bishop and Walker were to receive the sum of $10,000 commission for their services in that behalf. Continuing it provides:

" Now, THEREFORE, these presents WITNESSETH: That it is understood and agreed by and between the said party of the first part and said party of the second part, that upon each deposit in the said Thomas Cruse Savings Bank by said Kerr after the first day of June, 1895, of the 35 per cent specified in said contract [referring to the contract of purchase and sale above noticed] of the gross proceeds therein mentioned the said Bishop shall be at once, and hereby is declared to be at once entitled to 15.3 per cent. thereof, and the said Thomas Cruse Savings Bank under and by virtue hereof and upon a deposit of one of these agreements with it, is hereby authorized and directed to pay to the order of said Bishop said 15.3 per cent. of said sum so deposited by said Kerr under said agreement, this being intended to be an assignment and transfer by the said party of the first part to the said party of the second part of said 15.3 per cent. of said 35 per cent. as above set forth.

" It is further understood and agreed that if said Kerr, under the terms of said contract shall see fit to pay up in any other manner the said balance of sixty-five thousand dollars, the purchase price of said property, that immedi-

ately upon the payment by him into said bank under the terms of said agreement, that the said party of the second part shall immediately thereon be entitled to said 15.3 per cent. and the said Thomas Cruse Savings Bank is hereby directed and authorized to credit the same to the said party of the second part and pay the same to his order, the same as above specified for the payment of said per cent. of the said 35 per cent. and this agreement is to be binding and in full force and effect until the said sum of ten thousand dollars, and the whole thereof has been paid to said party of the second part in the manner above set forth or otherwise; it being understood that said commission is not to be paid unless the same is deposited in said bank under said agreement by said Kerr or his assigns."

Having gone into possession of the property, Kerr operated the mine continuously thereafter until June, 1896, during which time he expended about $50,000 in improving the property and constructing roads, and in the erection of a mill. He also from month to month, until November, 1895, regularly deposited to the credit of defendant in the bank mentioned in the agreement 35 per cent. of the gross output of the mines. The deposits so made aggregated about $4,000, and of the amount so deposited the appellant received his 15.3 per cent., amounting to the sum of $562.96, which is the entire sum received by him on account of his commission. From November, 1895, until June, 1896, although Kerr continuously worked the mine, and there was during such time an output amounting in gross to nearly $17,000, he failed and neglected to make the deposit of 35 per cent. of such output to respondents' credit in the bank; but early in the month of June, and while still engaged in working the mine, Kerr, without the knowledge or consent of appellant herein, entered into an agreement with respondents whereby, in consideration of the payment to them of $20,000 in cash, the respondents executed

a quit-claim deed to the premises in question and also directed the delivery of the deed of conveyance theretofore held in escrow by the bank and hereinbefore referred to. Thereafter the present suit was instituted by the appellant. His complaint sets out in full the various written agreements referred to herein, and in referring to the agreement between the defendants and Kerr last mentioned, which resulted in the execution and delivery of the quit-claim deed, the complaint contained the following allegation:

"Ninth. That on, to-wit: on or about the eighth day of June, 1896, the defendants, seeking to avoid further payment to the plaintiff and to defraud him out of the remainder due him upon his said commission, proposed to and agreed with said Kerr to close and complete said payment by a cash payment instead of monthly installments, and then and there agreed with said Kerr to receive in full payment and satisfaction of the remainder due upon said purchase under said agreement, the sum of Twenty Thousand Dollars, in consideration of the same being paid in cash and to the defendant G. W. Averill in person instead of the Thomas Cruse Savings Bank; and that said Kerr then and there paid to said G. W. Averill in person, and not to said Thomas Cruse Savings Bank, the sum of Twenty Thousand Dollars, as and for full payment of the balance then due upon said purchase price for said mining property, all of which was done without the knowledge or consent of the plaintiff, and for the purpose of avoiding further payment to him upon his said commission."

The answer in effect was that, prior to the execution of the conveyance last mentioned, Kerr had forfeited his rights under the contract of purchase, and that the respondents had declared a forfeiture and by reason thereof the property was re-vested in them, and that the contract of purchase brought about by appellant was never fulfilled or performed by Kerr, and thereafter respondents effected with Kerr a new agreement of purchase and sale in which appellant had no part.

The errors relied upon for a reversal relate to various rulings of the trial court upon the introduction of evidence at the trial, and to instructions given to the jury. It is necessary to notice only the most serious of the exceptions taken to the court's rulings upon the introduction of testimony. At the trial, the respondent, G. W. Averill, was called as a witness for appellant and questioned concerning the payment to him of the $20,000 by Kerr in consideration of the agreement reached by the parties in British Columbia. Under the guise of cross-examination, his own counsel, over repeated objections by appellant, was permitted to go into the whole subject of the defense, and, as a part of such so-called cross-examination, respondents' counsel was permitted to frame questions that were leading and grossly suggestive and self-serving. As a sample we notice the following:

" Q. Isn't it also a fact that you served notice on Professor Kerr at Helena prior to this time, through your attorney, Mr. Stranahan, that he had forfeited all his rights under the contract by reason of his failure to deposit 35 per cent. of the gross proceeds in the Cruse Savings Bank?

" Q. And at the time he came over here to negotiate with you on this matter, didn't he then admit to you that he had received your notice from your agent at Helena?

" Q. Didn't Professor Kerr admit to you when he came down there to make this deal, that he and his company, Abram T. Kerr, had forfeited all their rights under that contract?

" Q. Now, Doctor, didn't Professor Kerr also say to you that he found it necessary to abandon the contract and the property and that he couldn't fulfill his bargain?

" Q. And then it was that you entered into negotiations for the new contract?

" Q. Under this agreement by which he paid this $20,000, you executed a new and independent deed, here in Spokane, didn't you?"

We think it was an abuse of discretion upon the part of the trial court to have permitted these and some other questions of a similar character to be answered. Here was a witness who was a party to the action and hostile to the side calling him. Correct practice and every consideration of right required the application of the strict rule to his examination. The general rule is that the cross-examination must be limited to matters disclosed upon the examination in chief; still, when in such examination a general subject is unfolded, the cross-examination may develop and explore the various phases of that subject, but the cross-examination of the respondent which was here permitted went beyond all rules with which we are familiar, and enabled the defendant in the action, under the pretense of cross-examination, to improperly place his case before the jury in answer to questions which were leading, self-serving and suggestive, and which it is at once apparent would have been inadmissible if directed to the witness upon an examination in chief. It was something more than harmless error in admitting testimony that was relevant and material out of its regular order.

As a part of his charge the learned judge gave the following instructions:

" If you find in the usual course of business the purchaser of this mine would have paid this $65,000 into the Thomas Cruse Savings Bank, and this plaintiff [appellant] would have received his commission, but that he was prevented from so receiving said commission by these defendants entering into a new contract with the purchaser, then your verdict in this case must be for the plaintiff.

" But if you find from the evidence that this plaintiff *would not have received his commission under the contract; that the contract would not have been completed by the purchaser of the mine, and that* these defendants had no intention of cheating and defrauding plaintiff, and did not

prevent him from receiving his commission in that way, then your verdict must be for the defendants."

The charge closed with the following:

" *If you find* from the evidence that this commission was to be paid out of the proceeds of the mine, and through the Cruse Savings Bank, and that the purchasers of the mine were bound to pay the amount in that way, but that the defendants, by a subsequent agreement made without the consent of the plaintiff, prevented the plaintiff from receiving the money which he would have received if this subsequent agreement had not been made, then your verdict must be for the plaintiff.

" *But if you find* from the evidence that they were not bound to pay the money in that way, but might return the property and that they would not have paid the money, and that the subsequent agreement did not prevent plaintiff from receiving the money which he would have received then your verdict must be for the defendants."

In the instructions here set out, as well as in other parts of the charge, the trial court in effect told the jury that appellant could not recover unless they should find that in the usual course of business Kerr would have fully paid the balance of the purchase price (under the agreement of purchase) of $65,000, and unless appellant would have received the full amount of his commission but for a subsequent contract between the respondents and Kerr. Of this part of the charge the appellant complains as follows:

" The jury could not find for plaintiff unless they also find that he would have received all his commission. In other words, if the jury should find from the evidence that the purchaser would have faithfully performed the contract one year, two years, two and a half years, two years and eleven months, and would have paid twenty, thirty, forty, fifty or more thousand dollars, and plaintiff would have received five, six, seven, eight or nine thousand dollars, but that he would not have entirely performed it, nor

paid the entire $65,000, nor the plaintiff have received the entire $10,000, then they must find for the defendants."

We think this criticism is just and the error of the charge apparent.   Appellant correctly assumes that he had the right to have the contract continue in force throughout the full period of three years and to receive 15.3 per cent. of respondents' share, whether it amounted to much or little.   While apparently conceding that it was error to so charge, counsel for the respondents, with much ingenuity, suggests that at the most it was a mere harmless error, not requiring a reversal.   He contends that the evidence is conclusive to show that the purchaser (Kerr) had thrown up the property (at the time of making the subsequent contract with respondents under which they conveyed the premises in consideration of $20,000 paid to them), and intended to do nothing further with it under the original contract of purchase.   On the contrary, we think there was evidence from which the jury might have arrived at a different conclusion.   James E. Kerr, a witness for respondents, and the agent of the purchaser in the entire transaction, testified that at the time of making this last contract they had some thirty or forty men employed at the mine, and "were running right along."   He was asked if the last output in May, 1896 (which immediately preceded the making of the contract last referred to), was not the best they had ever had, and in response said:

"I think June was the best month—we only had two good months last year.

"Q. Do you remember what you had in June? [being June, 1896].

"A. I don't know—can't recollect, but I think about $3,000—it might have been more.

"Q. You run this mill right along, didn't you?

"A. Yes, sir."

And the respondent G. W. Averill admitted upon his

examination that, at the time he entered into the contract of sale for $20,000, he knew that " they were running the property with thirty or forty men right along." Indeed, it was conceded throughout the trial that, from the time Kerr went into possession of the property in April, 1895, until this last agreement was effected, he continued to operate the mines with the full crew of men and to make valuable improvements thereon, and there was no cessation of the work.

As the cause must be re-tried, we deem it necessary to notice another phase of the charge which was also duly excepted to. The court charged as follows:

" The *whole question* here for you to determine *is a question of fraud.* Now in order to constitute a fraud, there must have been a dishonest and corrupt purpose and intent on the part of the defendants to cheat the plaintiff. They must have accepted the alleged purchase price for the dishonest purpose of preventing the plaintiff from getting any of the money due on the original contract of sale. If in the ordinary course of business which they were doing, they would not in any event have received the amount of money, or any other sum of money than they did receive through the source under the contract it was bound to come, then any act of these defendants which did not prevent it from going through the bank, would not amount to fraud. But if the money would have gone through the bank and would have been paid by the purchaser in accordance with the contract, and these plaintiffs would have received their money, then I say, these defendants, by any new arrangements made between them and the purchaser without the consent of the plaintiffs, would not be released from paying the full amount of the commission. If these plaintiffs were not prevented by the subsequent agreement and sale of the property, from receiving money which they would have received under the contract, then they cannot recover. But if they were prevented from receiving money which they would have received if this last contract had not been

entered into, then they are entitled to a verdict at your hands. If they were not prevented, then they are not entitled to a verdict."

By this and similar instructions the jury were told that, unless the respondents made the subsequent contract of sale and final settlement with Kerr with the dishonest and corrupt purpose of preventing the appellant from getting what was his due on the original contract, and intended to cheat him out of such sum, the appellant would not be entitled to recover. We think the trial court labored under a misconception of the law, and the effect of this instruction was to weight the cause of the appellant with a burden which the law did not impose upon it. This is a legal action and it is the effect of the defendants' acts, rather than the motive which impelled them, that concerns the plaintiff in the present cause, and too much weight was attached to the motives of the defendants.

Respondents urge that the complaint in this action is insufficient. An examination of the record discloses that no demurrer was taken in the lower court, and while it is the right of a party to challenge the sufficiency of a complaint in this court, the rule is that

" In the absence of a demurrer the complaint, after judgment, should receive a very liberal construction." *Montesano v. Blair*, 12 Wash. 188 (40 Pac. 731).

But we are entirely satisfied that the complaint in the present cause states a good cause of action. The main objection urged against it is that the contract between respondents and the appellant operated as a complete assignment to appellant of an interest in respondents' share of the output of the mine. Also, that it appears from the complaint that Kerr had knowledge of this assignment, hence did not act innocently in taking the subsequent conveyance from respondents. We think it can make little difference whether the contract between the parties to the record

be regarded as an assignment or an agreement to pay from a particular fund—in either event it gave the appellant an interest in the contract between Kerr and respondents, which entitled him to recognition, and he was entitled to receive his share during the lifetime of the contract without interruption from respondents.

" The rule is clear and well settled, and founded in absolute justice, that no party to a contract can either prevent performance by another of any of its conditions, or, on the other hand, disable himself from complying with any condition, and derive any benefit or escape any liability thereby." *Dill v. Pope*, 29 Kan. 289.

For the errors noticed the judgment must be reversed and a new trial awarded.

SCOTT, C. J., and DUNBAR, ANDERS and REAVIS, JJ., concur.

### ON PETITION FOR RE-HEARING.

GORDON, J.—The principal reason urged for a re-hearing of this case is that the appellant " agreed to find a buyer," and that " it was plaintiff's duty to effect a sale, and, having negotiated a contract of sale, it was his duty to see that the contract was performed." We think the contract of May 3, 1895, became the substitute of all prior agreements on the subject of compensation. The complaint is founded upon that contract. Paragraph 9 alleges that during the life of the original contract between respondents and Kerr, and without the knowledge of appellant, respondents entered into a new contract with Kerr, the effect of which was to cancel the former one in which appellant was interested. But it is argued that " the record fails to disclose any evidence tending to show that the [old] contract *would* have been performed or that one dollar more would ever have been paid on it," this contention being based upon the testimony of the agent for the purchaser.

But counsel overlooks other testimony which tended to show that at the time of making the last contract between respondents and Kerr, there were some thirty or forty men employed at the mine, and that the output of the mine for the month preceding the making of such contract was one of the best they had ever had.

Our attention is also called to the following provision of the agreement upon which the action is based:

" It being understood that said commission is not to be paid unless the same is deposited in said bank under said agreement by said Kerr or his assigns."

And it is argued that Kerr's failure to keep the contract and deposit the money absolved and released respondents from all liability to appellant.

We think it does not follow that because Kerr failed to make the deposits provided in the old contract, such failure of itself terminated that contract. The provision by which time was made the essence was for the benefit of the respondents, and the right to enforce the contract belonged to the respondents, but the evidence in the case does not show that they ever attempted to do so. On the contrary, the evidence tended to show that during the lifetime of the contract, while the mine was being actually operated by the purchaser, the respondents voluntarily entered into a new agreement, under which, in disregard—as we think—of appellant's right, the property was actually transferred to Kerr, and the old contract thereby terminated. This termination of the old contract resulted, not in consequence of the expiration of time, or of any provision contained in it, but solely because of the new contract which was made without appellant's consent.

After a careful consideration of the able argument accompanying respondents' petition, and a painstaking reexamination of the entire record, a re-hearing is denied.

SCOTT, C. J., and ANDERS and DUNBAR, JJ., concur.