[No. 7824. Decided July 30, 1909.]

A. F. BLAIR et al., *Respondents*, v. WILKESON COAL & COKE COMPANY, *Appellant*.[1]

PLEADING—VARIANCE—WAIVER OF OBJECTION. In an action to recover for services rendered, the defendant cannot claim a variance in that the complaint was for the breach of an express contract, while the case made was on *quantum meruit* for services rendered, where it appears that the complaint was susceptible of two constructions, covering either phase of the case, and the defendant had not moved that it be made more definite and certain or required that plaintiffs make an election before the trial.

CONTRACTS—PERFORMANCE—EXCUSE FOR NONPERFORMANCE. In an action on an express contract for services, failure of the plaintiffs to perform their part is excused by acts of the defendant preventing performance.

SAME—PREVENTING PERFORMANCE—DEMAND — NECESSITY. In an action for a balance due upon contract, an express demand that plaintiffs be allowed to complete performance on their part is not necessary when defendant ordered plaintiffs to quit work and refused further payments.

APPEAL—REVIEW—FINDINGS. In an action tried before the court without a jury, insufficiency of the findings is immaterial where the evidence justifies the judgment.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered October 16, 1908, upon findings in favor of the plaintiffs, after a trial before the court without a jury, in an action on contract. Affirmed.

*Herbert S. Griggs*, for appellant.

*C. E. Stevens* and *W. C. Morrow*, for respondents.

[1]Reported in 103 Pac. 18.

FULLERTON, J.—The respondents brought this action to recover for professional services rendered the appellant. In their complaint they averred the corporate capacity of the appellant, their own copartnership, and continued as follows:

"(3) That on or about the 6th day of February, 1908, plaintiffs and defendant entered into a certain contract for the performance by the plaintiffs of professional work and services in the designing and construction of a coal washing and storage plant for the defendant at its mine in the said town of Wilkeson, Washington, under and by virtue of which contract plaintiffs were to prepare and furnish plans, drawings, specifications, bills of material and to secure bids on material and machinery for the said coal washing and storage plant and to provide and furnish the general engineering superintendence necessary to the construction of such plant.

"(4) That defendant agreed to pay as consideration for such services by plaintiff an amount equal to five per cent (5%) of the total cost of said work, in the following manner, to wit: Three hundred ($300) dollars on the date of said agreement and thereafter a payment of three hundred ($300) dollars on the first of each and every succeeding month for three months until the total sum of twelve hundred ($1200) dollars should have been paid. The balance of said consideration of five per cent (5%) of the total cost of said work, less said sum of twelve hundred ($1200) dollars to be paid upon completion of said work. It was further agreed that in the event of the postponement or abandonment of said work at the instance of defendant, the plaintiffs should receive as compensation for their services five (5%) of the total estimated cost of said work.

"(5) That thereafter pursuant to said agreement and understanding and at the special instance and request of defendant, plaintiffs proceeded with said engineering work and prepared preliminary sketches, working drawings, specifications, bills of material, detail drawings, procured bids on material and machinery, made and prepared permanent plans and tracings and did generally all such engineering work as was proper and necessary preparatory to the construction of said coal washing and storage plant.

"(6) That thereafter on or about March 1st, 1908, de-

fendant notified plaintiffs to discontinue work and has ever since refused to allow plaintiffs to proceed with the same.

"(7)   That the estimated total cost of said coal washing and storage plant amounts to the sum of forty-seven thousand two hundred fifty ($47,250) dollars; that plaintiffs' compensation for said services rendered, based on the said rate of five per cent (5%) of said total estimated cost amounts to the sum of twenty-three hundred sixty-two and 50-100 ($2,362.50) dollars, which said sum is the reasonable and fair value of said services; that no part of said sum has been paid, except the sum of three hundred ($300) paid at the date of said agreement and the further sum of three hundred ($300) paid on or about March 2nd, 1908, leaving a balance due plaintiffs of seventeen hundred sixty-two and 50-100 ($1762.50) dollars, demand for which has been made and refused."

Issue was taken on the allegations of the complaint and a trial had before the court sitting without a jury.   The evidence tended to show, and the court found in substance, that the appellant is a corporation, owning and operating extensive coal mines and works, situated at Wilkeson, in this state. That the respondents are mechanical engineers, practicing their profession in the city of Tacoma.   That sometime in the early part of the year 1908, the appellant, acting through its general manager, employed the respondents to prepare plans and specifications for a coal washing plant to be constructed near its mine.   A general description of the character of plant wanted was given the respondents by the manager, and therefrom they prepared a small scale plan which was submitted to the manager.   The first one submitted did not suit, and a second one was prepared and handed him.   This one was approved, after some minor changes, and the respondents were directed to prepare detail plans in accordance therewith.   The respondents thereupon enlarged the drawings according to the scale plan submitted, and thereafter submitted them to the manager, together with a form of contract by the terms of which the engineers agreed to furnish preliminary sketches, working drawings, specifications, bills of materials, detail

drawings, for a coal washing and storage plant at Wilkeson, and to superintend its construction, for a compensation equal to five per centum of the total cost of the work; the compensation to be paid, $300 on the acceptance of the contract, $300 on the first of each succeeding month until a total of $1,200 should be paid, and the balance on the completion of the work. The appellant's manager did not sign the contract, giving as his reason that before signing it he desired to go over its details with his superintendent. He approved the contract, however, both with respect to the compensation and plans (except certain minor details regarding machinery) and directed them to continue with the work. The next day he called and paid $300, and requested that a floor plan be immediately prepared. Such plan was prepared at once, and during the month following numerous conferences were held with him by respondents, at which time all the designing and engineering work was done, detail plans and specifications were drawn, and bids for the construction work called for; there remaining of the work included in the contract of employment only a few minor tracings, and the superintendence of the construction work while the building should be in course of construction. At the end of the month the appellant made a second payment of $300, and at the same time notified the respondents to discontinue work on the plans. It was further shown that the work was not thereafter continued, and that the appellant refused to make any further payments, although the respondents offered to perform and demanded payment for the balance claimed to be due them. Evidence was also introduced showing the reasonable value of the services performed. The trial resulted in findings and a judgment in favor of the respondents for the sum of $1,262.50, which the court found to be the reasonable value of the services rendered, after deducting the payments made.

The appellant first contends that there is a fatal variance between the pleadings and the proofs. He contends that the

complaint is based on an express contract, and a breach thereof on the part of the appellant, and that the respondents were entitled, because of the breach, to receive the full contract price, while the case was tried on the theory of a *quantum meruit*; that is, that the respondents performed services at the request of the appellant and were entitled to recover the reasonable value of such services. It must be conceded, we think, that the complaint is so worded as to lend color to the claim that it was capable of two constructions; one, that it is an action to recover on an express contract for the performance of certain services, regardless of the value of the services rendered; and the other, that it is an action to recover on a *quantum meruit* for services rendered under a contract after a breach of the contract, the complainant waiving the right to sue in damages for the breach. But since the complaint was thus capable of a double construction, the appellant's remedy was not to claim a variance between the pleadings and proofs. It could, prior to taking issue thereon, have by motion compelled the respondents to make the complaint more definite and certain, or could at any time before entering on the trial have compelled them to elect on which theory of the complaint they would proceed; but by entering on the trial, these objections were waived, and the appellant's sole right thereafter was to combat the case as made by the evidence. It was of no avail, therefore, to claim a variance between the pleadings and proofs. In fact there was no such variance. It was merely a case where the plaintiff had a choice of remedies, and his complaint did not make clear which remedy he had chosen.

It is next claimed that there was a failure of proofs on the part of the respondents. It is said that since they alleged an express contract, it was necessary to prove a complete performance of the contract, or such facts as would justify or excuse their failure to perform the contract in its entirety, and that they failed in their proofs in this respect. Undoubtedly the legal rule is here correctly stated, but we do not

think the appellant properly interprets the evidence. It seems to us that the respondents did prove a sufficient excuse for failing to complete the work. They performed the contract as far as they could, and were only prevented from performing it in its entirety by the acts of the appellant. This is clearly a sufficient excuse for nonperformance. But it is said there was no express demand that they be allowed to continue in the performance of the work, nor any demand for the balance of the money claimed to be due. As we read the evidence there was both. Demand, however, was hardly necessary. They were expressly ordered to quit work, and were refused further payments. This rendered unnecessary an express demand either to be allowed to continue the work or for payment for that which had been done. The claim was ripe for action the moment they were denied the right to go on with the contract.

Finally, it is urged that the findings of the court are incomplete and inconsistent. While we do not discover this fault in the findings, it would not avail the appellant anything if they were so. The evidence abundantly justifies the judgment entered, and in such a case this court is obligated by the statute to affirm the judgment, no matter how irregular the proceedings may be in the respect complained of. The judgment is right and will stand affirmed.

RUDKIN, C. J., CROW, CHADWICK, GOSE, and DUNBAR, JJ., concur.