[No. 25592.   Department Two.   September 19, 1935.]

Mrs. C. M. PAYNE, *Respondent*, v. DAVID H. RYAN, *Appellant*.[1]

*Luby & Pearson, Brown & Weller*, and *Chas. C. Crouch*, for appellant.

*Roy A. Redfield*, for respondent.

HOLCOMB, J.—Respondent, in her amended complaint, on which this case was tried to the court and a jury, among other material things, alleged as follows:

[1]Reported in 49 P. (2d) 53.

"That defendant is a contractor, operating in the State of Washington, and working under contract with the United States of America for excavation at the dam site on the Columbia River in connection with the improvement generally spoken of as the Columbia Basin Dam project. The subject-matter of the contract referred to is designated as 'Excavation of over-burden at Columbia River Dam Site, Sections 1 and 2.' The contract in question was entered into with the Department of the Interior, Bureau of Reclamation, and same was awarded to defendant on or about November 30th, 1933.

"That defendant, at the times and in the manner hereinafter set forth, entered into a contract with the plaintiff for performance of a portion of the work contemplated in defendant's contract with the government. The contract with plaintiff was in the nature of a sub-contract, and its subject matter was the hauling and placing of the excavated material. Such sub-contract with the plaintiff was partly written and partly oral.

"The written portion of said contract between plaintiff and defendant took the form of a written proposal dated November 13th, 1933, and accepted by the defendant on November 19th, 1933, which proposal and acceptance thereon are in words and figures as follows:

" 'David H. Ryan Co., November 13, 1933.
c/o Palace Hotel,
San Francisco, California.
Gentlemen:

" 'I hereby propose to furnish the necessary trucks, equipment, labor and supplies to haul and place the excavated materials as specified in contract to be let November 20th, 1933, at Spokane, Washington, and known as excavation of over-burden at Columbia River Damsite sections No. 1 and No. 2, and to be governed by all the specifications and requirements the same as you are governed in your contract with the United States Department of Interior, Bureau of Reclamation, for the sum of thirteen cents (13¢) for each cubic yard so hauled within the free haul limits, and one-half cent (½¢) for each station yard of overhaul.

" 'Engineers estimate of yardage to govern payment, and payment of the above to be made in the same manner and on the same basis as you are paid by the United States Department of Interior, Bureau of Reclamation.

" 'I also agree to assume the maintenance and upkeep of all hauling roads and dumps as you will notice, to haul and place.

" 'This proposal is placed in confidence and good faith and after being duly signed by both parties, will be binding and in effect, provided that your firm is awarded the above mentioned contract.

" 'Yours very truly,

C. M. PAYNE CONTRACT TRUCKING

By JOE WILLIAMS, Manager

" 'ACCEPTED this 19th day of November, 1933, subject to your satisfying me of your ability to finance this contract, and subject to a final contract being drawn covering all details, at the price set out above, same to be to my satisfaction and to be signed within five (5) days of date of award.

" 'DAVID H. RYAN'

"The foregoing instrument was executed by Joe Williams, manager and general agent for the plaintiff, who was then and there authorized to execute the same, and by the defendant personally. That such instrument was signed on the evening prior to the opening of bids by government officers in charge. On the day following acceptance of plaintiff's proposal by the defendant, the bids were opened by government officers, and defendant was shown to be the lowest bidder. Thereafter, and on or about November 30th, 1933, the formal award of the government contract was made to defendant.

"The foregoing written document represents only the earlier stage of negotiation between the parties. That the contract between plaintiff and defendant was thereafter confirmed by oral agreement, and its subject-matter modified, and all conditions eliminated, as set forth in the following paragraphs.

"The condition precedent, stated in his written acceptance by defendant, and relating to financial ability

of the plaintiff, was excused, and eliminated from the contract of the parties, through and by reason of the occurrence of the facts next in this paragraph alleged. On the afternoon of November 20th, 1933, following the opening of bids, defendant told plaintiff's agent that plaintiff could depend upon having the contract, and not to bother for the present about any writings, but to get equipment together and organize for the performance of the work. That plaintiff relied on such statement and believed in the good faith of the defendant, and incurred expense in collecting her equipment, some of which was then situated in Montana. Further in reliance on such statement, plaintiff forbore to take advantage of an invitation then extended to her to bid for contract employment on another government contract in Montana, namely: the Fort Peck improvement. Plaintiff had been solicited to bid on the hauling on such work and competition was not severe, and plaintiff is informed and believes and therefore alleges the fact to be that she could have secured a profitable contract on the Fort Peck work, but for the assurance made by defendant that she could depend upon performing said work for defendant at the Grand Coulee Dam.

"Thereafter, and on or about December 8th, 1933, by oral agreement then made between defendant and plaintiff's general manager, the existence of the contract as a present valid obligation was further confirmed, and its subject-matter was reduced so as to give to plaintiff only that portion of the work on the west side of the Columbia River, which reduced amount is specifically designated as Section No. 1.

"With respect to the making of a written contract, plaintiff shows that such condition of the original proposal was excused and/or waived by the defendant. That except for the two meetings referred to in paragraphs VII and VIII above, the defendant prevented and forestalled by a deliberate course of conduct any opportunity for discussion of such contract, or the making of a draft thereof, or any interviews whatsoever between plaintiff or her agent, and the defendant or his representative. That defendant referred the general agent of plaintiff to one Ford, who was the

secretary and assistant for defendant, but the said Ford evaded plaintiff and by pretext of prior appointments, and by the device of constantly admitting other persons to his private office while plaintiff's agent was kept waiting, delayed, hindered, and finally prevented any discussion of the subject of written contract; meanwhile defendant was negotiating with other parties for the performance of the same contract work at a less price, and this fact became known to plaintiff. That such evasion on the part of defendant and his agent, and their prevention of any interviews with him, was deliberately planned and carried out by defendant and his agent. That defendant finally disabled himself from performing his contract obligation with plaintiff, and made useless any further attempt on the part of the plaintiff to discuss a written contract, in that defendant openly negotiated with other parties for performance of such work and finally contracted with them and repudiated his obligation to plaintiff.

"That section No. 1, this being the physical limit of the contract as modified orally, comprises 1,020,000 cubic yards. That the plaintiff could and would have performed this contract at a cost to her of 9¢ per yard, leaving a profit of 4¢ per yard between such cost and the agreed price. As applied to the total yardage, the performance of the contract would have yielded to the plaintiff a profit of $40,800.00. Such sum would have been net to the plaintiff, and she alleges that she has been damaged in such amount through breach of this contract on the part of the defendant."

Damages for $40,800 were prayed.

A demurrer to the amended complaint having been interposed and overruled, appellant answered denying each and every allegation in the complaint, except that he admitted the execution of the writing set forth therein.

On those issues, the case went to trial, and after a trial lasting nearly seventeen days, the jury rendered a verdict in favor of respondent for $18,500, upon which judgment was entered, after motions by appel-

lant for judgment n. o. v. or for a new trial were denied. This appeal results.

The errors assigned by appellant are in overruling his demurrer to the amended complaint; in denying his challenge to the sufficiency of the evidence at the close of respondent's case; in denying his challenge to the sufficiency of the evidence at the close of all of the testimony; in denying his motion for judgment notwithstanding the verdict; in denying his motion for a new trial; in rendering judgment against appellant; and in giving the following instruction to the jury:

"A waiver of conduct which indicates that a requirement will not be insisted upon becomes binding if the party from whom performance is due changes his position in reliance on such conduct. After such change of position, it is impossible for the party who made the waiver to change his mind, and revive the condition or requirement and insist upon performance of it. A waiver once made can not be revoked. If waiver occurs through prevention of performance, no other factor need be considered; that is to say, if one party prevents the other from performing some requirement of the contract, such prevention will operate as a complete waiver of the requirement in question, and the party who prevented can not complain of failure to perform the requirement which he waived. No matter how the waiver occurs, if once made it can not be revoked by the waiving party. The effect of a waiver, as applied in the law of contracts, is to remove entirely from the contract that requirement which has been waived. The result is the same as though such requirement was never called for at all."

It will be observed that there is no complaint as to the admission or rejection of any evidence by the trial court.

The argument by appellant is under three headings: (1) There was no contract between the parties; (2) respondent was unable to perform; and (3) error in instructing the jury.

The second contention will be determined first, since it has an important bearing upon the case and is purely a question of fact.

The evidence, as shown in the abstract and supplemental abstract of respondent, is substantial and competent to show that respondent either had or was able to procure ample equipment to perform the contract, had she secured it. Her reputation for business integrity and success in such trucking operations was very high. She had never been harrassed by creditors and was not likely to be in the performance of such contract as this. This proof went to the jury, which found in her favor.

The first contention of appellant is largely based upon the premise that it is a fundamental principle of the law of contracts that there must be a meeting of the minds of the parties upon all essential details before there can be a contract, which we accept as correct. It must be remembered that the amended complaint alleges that the contract was partly in writing and partly oral; that the condition precedent of respondent being able to satisfy appellant of her ability to finance the contract

". . . and subject to a final contract being drawn covering all details, at the price set out above, same to be to my satisfaction and to be signed within five (5) days of date of award,"

was alleged to have been orally waived by appellant. Therefore, the allegations and proofs submitted by respondent, and accepted by the jury as true, made the contract entirely oral.

The evidence shows that appellant, after the principal contract had been let, pursued a course of evasion with Williams, the manager for respondent, urging him to "forget about the written contract, and the financial showing and be ready to get to work," negotiated with

other subcontractors for lower prices for the truck work, and finally repudiated the contract with respondent. Hence, it was he who breached the oral contract which had been entered into between the parties. He had admitted, both in published interviews and to disinterested persons, that he had given the contract to respondent. There was very strong evidence of the making of the oral contract as alleged by respondent. It was appellant himself who prevented performance of the conditions precedent by respondent.

■ " 'The rule is clear and well settled, and founded in absolute justice, that no party to a contract can either prevent performance by another of any of its conditions, or, on the other hand, disable himself from complying with any condition, and derive any benefit or escape any liability thereby.' *Dill v. Pope,* 29 Kan. 289." *Bishop v. Averill,* 17 Wash. 209, 49 Pac. 237; 50 Pac. 1024.

"They performed the contract as far as they could, and were only prevented from performing it in its entirety by the acts of the appellant. This is clearly a sufficient excuse for nonperformance." *Blair v. Wilkeson Coal & Coke Co.,* 54 Wash. 334, 103 Pac. 18.

"It is a well recognized principle of law that one who prevents a thing may not avail himself of the nonperformance which he has occasioned." *McDonald v. Wyant,* 167 Wash. 49, 8 P. (2d) 428.

See, also, 13 C. J. 648.

■ In *Loewi v. Long,* 76 Wash. 480, 136 Pac. 673, upon the question of whether or not parties should be bound in the contractual relation even though they intended to reduce their agreement later to a written contract, we said:

"To determine whether or not a contractual relation has been established by informal writings, such as letters and telegrams, where the parties have in mind the subsequent signing of a formal written contract, it is necessary to inquire, (a) whether the subject-matter has been agreed upon, (b) whether the terms

are all stated in the informal writings, and (c) whether the parties intended a binding agreement prior to the time of the signing and delivery of a formal contract. If the subject-matter is not in dispute, the terms are agreed upon, and the intention of the parties plain, then a contract exists between them by virtue of the informal writings, even though they may contemplate that a more formal contract shall be subsequently executed and delivered. [Citing cases.] *Green v. Cole,* 103 Mo. 70. In the case last cited, the law is stated in this language:

" ' . . . On the other hand, it is well-settled law that, where the parties have assented to all the terms of the contract, the mere reference to a future contract in writing does not negative the existence of a present contract. In other words if the parties make an agreement which they intend shall be binding from the time it is made, effect will be given to it from that time, though they intend it shall be superseded by a more formal written agreement.' "

In the *Loewi* case, *supra,* this court distinguished *McDonnell v. Coeur d'Alene Lumber Co.,* 56 Wash. 495, 106 Pac. 135, greatly relied upon by appellant, on the ground that, in that case, the court held that the details of the contract had not been arranged and that the contract itself was to be reduced to writing and the details stated therein, which was never done. It is stated in the *Loewi* case that all the essential terms of the contract were agreed upon and the parties intended that a contractual relation should exist prior to the time of the signing of the formal written contract. To the same effect are: *National Bread Wrapping Machine Co. v. Crowl,* 137 Wash. 621, 243 Pac. 840; *Strange & Company v. Puget Sound Machinery Depot,* 176 Wash. 90, 28 P. (2d) 111. There is the same lack of essential details in another case, relied upon by appellant, *Newport Const. Co. v. Porter,* 118 Ore. 127, 246 Pac. 211.

*Empson Packing Co. v. Lamb-Davis Lumber Co.,*
112 Wash. 75, 191 Pac. 833, also relied upon by appel-
lant, differs widely in its principal features, in that
there the parties had been negotiating for a consider-
able period and had finally reached an agreement upon
a written form, which, however, had to be signed ac-
cording to their expressed intention before it could be-
come operative. There was no such expression or
mutual intention in the case at bar.

Appellant's third contention of error is based
upon the instruction quoted herein, which was excepted
to by appellant upon the ground that the parts charg-
ing that, ''no matter how the waiver occurs, if once
made it cannot be revoked by the waiving party,'' and
''a waiver once made cannot be revoked,'' are erro-
neous, arguing that a waiver can be revoked before
having been acted upon by the other party to his in-
jury.

The matter of whether there had been a waiver on
the part of appellant, was one of the principal issues
of fact in the case. No instruction was requested by
appellant upon that phase of the case. It was incum-
bent upon the court, under the issues presented by the
pleadings and facts, to present two phases of waiver:
One where performance is prevented, and another
where performance is headed off by some expression
or conduct containing elements of estoppel.

Other instructions immediately preceding and fol-
lowing the quoted instruction, and one numbered 18,
particularly deal with waivers on both phases. Having
considered all of these instructions, we consider them
fair and correct in law upon the issues.

We conclude that there was no reversible error, and
the judgment is affirmed.

MILLARD, C. J., MITCHELL, BLAKE, and STEINERT, JJ.,
concur.