[No. 33437.   Department Two.   May 31, 1956.]

FLOYD McKENNON, *Respondent*, v. STUART C. ANDERSON
*et al., Appellants.*[1]

[1]Reported in 298 P. (2d) 492.

*Wright, Booth & Beresford,* for appellants.

*O. D. Anderson* and *J. P. Hunter,* for respondent.

ROSELLINI, J.— In this action for wrongful eviction, the respondent recovered damages in the trial court in the amount of $888.05, being the expenses which he incurred in moving from the leased premises. The trial court's findings must be taken as the established facts of the case, since the

appellants, in assigning error to the findings, have failed to set forth those portions which they claim to be erroneous. Rule on Appeal 43, 34A Wn. (2d) 47 as amended, effective January 2, 1953. *In re Youngkin,* 48 Wn. (2d) 425, 294 P. (2d) 423.

The appellants, who are partners, are the owners of a farm situated near Redmond, Washington. On or about May 28, 1953, they agreed to lease to the respondent the major portion of a barn and a stock-feeding yard located on their farm, and the terms of the agreement were embodied in a letter written by the appellant Anderson, addressed to the respondent, and dated May 28, 1953. The letter reads:

"This is to confirm our conversation of the other day and the terms we agreed on relative to leasing the major portion of the barn and surrounding yard on our property located near Redmond.

"Rental of the barn shall be $830.00 for ten months beginning June 1, 1953, and ending April 1, 1954.

"You understand we intend to store hay in part of the barn and might commence improvements around the barn but which would not interfere with your operations or the storing of your feed.

"If at any one time you wish to increase your storage over and above 350 tons limit agreed upon we will be acceptable to any equitable basis for increased rental based on any larger operation not contemplated at this time.

"I have informed my partner, Mr. Fred Maguire of this letter and he is in full agreement with the terms we discussed.

"At an early date we shall draw up a short term lease but in the meantime you may go ahead and use the barn. Of course, we do not assume responsibility for your property in the barn in any way or form and in our agreement we will include the usual terms which will release us from any liability whatsoever from your operations on our property.

"It has been a pleasure meeting you and I am sure we will have a satisfactory business relationship."

The respondent, relying upon the agreement contained in this letter, moved a large quantity of hay, grain, and other feed from his farm near Monroe and stored it in the barn in question, and also moved a large number of livestock to the barn and feeding yard. The barn is rectangular in shape,

approximately 195 feet in length and 76 feet in width, and consists of a ground floor equipped with feeding pens and troughs, a storage floor immediately above the ground floor, and a third floor which is also used for storage. The second floor is divided into twenty-six sections or compartments. There are openings in the storage floor through which feed can be dropped into the feeding troughs. It was contemplated that the respondent would conduct livestock feeding operations upon the premises and would use the feeding troughs and pens as well as the storage areas in the barn.

At the time the lease agreement was entered into, the barn was empty, but shortly after the respondent had taken possession he discovered that a tenant of the appellants, one Tony Harder, also had access to the barn and was storing hay on the second floor. The hay was spread out over the second floor in such a way that the feeding chutes were materially obstructed and the respondent's feeding operations were made more difficult and expensive.

On or about September 29, 1953, the respondent discovered for the first time that the appellants, prior to the time that they entered into the agreement with the respondent, had leased the space covered by his agreement to their tenant, Tony Harder. Shortly thereafter, nothing having been done to remove the obstructions, the respondent moved all of his livestock and feed from the premises to another barn and feeding lot located near his home in Monroe, and brought this action for damages.

The appellants contend that they were not bound under the letter written by Anderson on May 28, 1953, because (1) the description of the leased property was inadequate; (2) the instrument was not signed by the lessee; and (3) by the terms of the letter, the parties contemplated that they would not be bound until a more formal lease was executed.

■ No particular words, technical or otherwise, are necessary to constitute a lease, and the existence of the relationship of landlord and tenant is primarily a fact question to be determined from the intent of the parties ascertained from a consideration of the entire instrument creating the tenancy. *Barnett v. Lincoln*, 162 Wash. 613, 299 Pac.

392; *Lamken v. Miller*, 181 Wash. 544, 44 P. (2d) 190. If exclusive possession or control of the premises, or a portion thereof, is granted, even though the use is restricted by reservations, the instrument will be considered to be a lease and not a license. *Barnett v. Lincoln, supra.*

It is true that the letter of May 28th, while it authorizes the respondent to take possession of the barn and yard in question, does not contain a legal description of the premises. Assuming that a legal description is necessary, this defect was cured when the respondent went into possession and did the things called for by the instrument. *Zinn v. Knopes*, 111 Wash. 606, 191 Pac. 822. See, also, *Browder v. Phinney*, 37 Wash. 70, 79 Pac. 598.

The contention that the appellants are not obligated under the lease because it is not signed by the respondent is also without merit. A lease need not be signed or acknowledged *by the lessee* if he accepts it and acts under its terms. *Central Bldg. Co. v. Keystone Shares Corp.*, 185 Wash. 645, 56 P. (2d) 697; *Goddard v. Morgan*, 193 Wash. 83, 74 P. (2d) 894.

The next question is whether the letter establishes that no contractual relation was intended until the execution of a formal lease. In *Loewi v. Long*, 76 Wash. 480, 136 Pac. 673, this court said:

"To determine whether or not a contractual relation has been established by informal writings, such as letters and telegrams, where the parties have in mind the subsequent signing of a formal written contract, it is necessary to inquire, (a) whether the subject-matter has been agreed upon, (b) whether the terms are all stated in the informal writings, and (c) whether the parties intended a binding agreement prior to the time of the signing and delivery of a formal contract. If the subject-matter is not in dispute, the terms are agreed upon, and the intention of the parties plain, then a contract exists between them by virtue of the informal writings, even though they may contemplate that a more formal contract shall be subsequently executed and delivered."

This case was cited and followed in *National Bread Wrapping Machine Co. v. Crowl*, 137 Wash. 621, 243 Pac. 840, and

in *Payne v. Ryan,* 183 Wash. 590, 49 P. (2d) 53. In the latter case, the defendant had made his acceptance of the plaintiff's offer subject to

" ' . . . a final contract being drawn covering all details, at the price set out above, same to be to my satisfaction and to be signed within five (5) days of date of award.' "

We held that, by inducing the plaintiff to begin preparations for the work to be performed under the contract and then delaying, hindering, and finally preventing any discussion of the final written contract, the defendant had waived this condition and could be held liable for damages for breach of the contract contained in the informal letter.

■ The letter of May 28th acknowledged that the terms of the lease, which were set forth, had been agreed upon. According to these terms, the lease was to run from June 1, 1953, to April 1, 1954, and the respondent was authorized to take possession before the execution of the formal lease. Since the moving of the livestock and feed would entail considerable expense, and since the term of the lease would begin before the formal lease could be drawn, the only reasonable conclusion is that the parties intended to be bound by their informal agreement.

■ Furthermore, the appellant Anderson testified that the parties had never discussed the drawing of a formal lease, leaving the inference that his offer to draw one was purely gratuitous. The respondent, on the other hand, stated that he had asked for the lease on several occasions and each time had been told that it would be ready in a few days; that the appellant Anderson had told him not to worry, that he was amply protected, and had refused his offer to have the lease prepared by his own attorney. Were we to find that the appellants' obligation was conditioned upon the execution of a formal lease, we would be compelled to hold that they had waived this condition by delaying the preparation of the lease after inducing the respondent to change his position on the faith of the agreement.

■ The appellants next urge that evidence of the parties' understanding regarding the use to be made of the barn and adjoining yard, and the meaning of the term "we," can-

not be considered, contending that such evidence should have been excluded under the parol evidence rule. That rule bars evidence which will vary or contradict the terms of a written instrument. It does not, however, exclude testimony to show the meaning and intent of the parties where the language used renders them doubtful. *Hoover v. Sandifur*, 25 Wn. (2d) 791, 171 P. (2d) 1009, 168 A. L. R. 170.

In *Leavenworth State Bank v. Cashmere Apple Co.*, 118 Wash. 356, 204 Pac. 5, we approved the admission of parol evidence to explain the meaning of the terms "now manufactured" and "subject to fires," as used in a written contract. At p. 361, quoting from 6 R. C. L. 849, we said:

"Courts, in the construction of contracts, look to the language employed, the subject-matter and the surrounding circumstances. They are never shut out from the same light which the parties enjoyed when the contract was executed, and accordingly they are entitled to place themselves in the same situation as the parties who made the contract, so as to view the circumstances as they viewed them, and so as to judge of the meaning of the words and of the correct application of the language to the things described."

■ Although it appears from the content of the letter of May 28th that the writer, when he used the term "we," was referring to himself and his partner, the circumstance that he had a tenant who was entitled to use the barn renders the term ambiguous, since the tenant may have been included in the term. Parol evidence was therefore admissible to show that the respondent was not informed that the tenant had an interest in the barn, and that the lease was given by the partners only.

■ It was also proper to show by parol that the appellants were informed by the respondent that he intended to use the barn for a feeding operation, and that the barn was designed especially for such use. The lease entitled him to a "major portion" of the barn, no restrictions were placed on its use, and the appellants agreed to store their hay in such manner as not to interfere with the respondent's operations. By showing the nature of these operations and how they were obstructed by the storing of the tenant's hay, the

respondent did not vary or contradict any of the terms of the lease, and the court did not err in considering this evidence.

Finally, the appellants urge that it was error to award damages for the cost of removal before the end of the term. There is no merit in this contention. In case of wrongful eviction, the tenant is entitled to recover all the damages which reasonably resulted to him from the landlord's wrongful act, including the expense of moving. *Chung v. Louie Fong Co.*, 130 Wash. 154, 226 Pac. 726.

The judgment is affirmed.

HAMLEY, C. J., SCHWELLENBACH, HILL, and WEAVER, JJ., concur.

[1]Reported in 298 P. (2d) 483.