[No. 10631. Department Two. April 28, 1913.]

DOMINIC RASTELLI, *Respondent*, v. L. C. HENRY *et al.*, *Appellants.*[1]

MASTER AND SERVANT — INJURY TO SERVANT — NEGLIGENCE — EVIDENCE—SUFFICIENCY. In an action for personal injuries sustained by an employee riding on the foot board of a dinkey engine, by reason of the negligently placing of a pinch bar on the foot board, it is error to submit to the jury an issue as to whether defendants' foreman placed the pinch bar there, where the only evidence on the subject was that of the foreman who testified that the plaintiff himself placed it there, and the plaintiff testified he did not know who did it.

[1]Reported in 131 Pac. 643.

TRIAL—INSTRUCTIONS. It is reversible error to submit to the jury a vital issue, where there is no evidence on the subject to warrant the verdict found thereon.

Appeal from a judgment of the superior court for King county, Gay, J., entered April 27, 1912, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee engaged in construction work. Reversed.

*George E. de Steiguer* and *Peters & Powell*, for appellants.
*Burton E. Bennett*, for respondent.

MAIN, J.—This is an action brought for the purpose of recovering damages for personal injuries. The defendants were contractors doing railroad construction work. At the time of the injury, they were constructing at Earlington, Washington, for the Chicago, Milwaukee & Puget Sound Railway Company, switch tracks in the switch yards located at that place. The method of operation was briefly this: By means of a steam shovel, earth was taken from a pit, placed in dump cars, and then, by means of what is known as a dinky engine, transported some distance up the track, where the sides of the dump cars were loosened and the dirt fell on either side of the track just outside of the rails. This caused ridges or mounds of earth to exist near the track. The track was of substantial construction, having been built with the rails and ties which were to remain upon the ground for a switching track.

About September 14, 1911, the plaintiff was employed by the defendants as a laborer, and a day or two thereafter was placed at work in the pit, where his duties were to assist in moving forward the steam shovel as occasion might require. There were with him three other pit men and a man who was designated as a "coal man." On the morning of the 21st, the foreman directed all the men that were working in the pit to get two pinch bars, and some other articles, and place them upon the dinkey engine which was then standing near the

steam shovel, the purpose being to go about a half mile up the track and there place upon the track a plow car which had been delivered at that point; a plow car being a car which would be used for leveling down the humps or mounds of earth at the side of the track already referred to. In response to the direction of the foreman, the pinch bars and other articles were brought out of the pit by the men therein. The men then got aboard the engine, four of them on the running board at the rear, two on either side of the center. The plaintiff took a place on the foot board in front at the left, he claims at the express direction of the foreman. This the foreman specifically denies. One of the pinch bars had by some one been placed upon the foot board where the plaintiff stood. The running board and foot board were each about seven feet long. Above each was a heavy timber commonly called the "deadwood." The engine started up the track with the men in the places indicated; the engineer and the foreman in the cab. After going some distance, crossing the main line of the railroad track and at a point about three hundred feet beyond, the pinch bar, which was an iron rod, wedge shaped at one end and round at the other, and about four or five feet long, which had been placed on the foot board, gradually jostled outward until the end thereof came in contact with the mounds of earth at the side of the track. This caused it to push the feet of the plaintiff off the foot board. He fell upon the track and the engine passed over one limb, severing it, or lascerating it in such a manner that it was necessary to be amputated above the knee.

The plaintiff claims that the defendants were negligent in that the engine was operated at an excessive rate of speed; that the track was uneven and unsafe; that the leaving of the mounds at the side of the track on which the end of the pinch bar caught was an unnecessary hazard and a dangerous risk; and that the pinch bar had been placed upon the foot board, either by the foreman himself, or at his express direction and command. The plaintiff, when asked the direct

question as to who placed the pinch bar upon the foot board, stated that he did not know. The foreman, when asked the same question, stated that he saw the plaintiff place it there himself. There is no other evidence in the record on this question. The case was tried to the court and a jury, and a verdict for the plaintiff returned. Motion for new trial being overruled, judgment was entered on the verdict, from which the defendants appeal.

Error is assigned in the refusal of the court to give requested instructions, and as to instructions given. Two of these will be noticed. The court was requested by the appellants to instruct the jury that there was no evidence that the foreman either placed, or caused to be placed, the pinch bar on the foot board in front of the engine, and that unless they found that the appellants were guilty of some other act of negligence charged in the complaint, they should return a verdict for the appellants. This request was in the following form:

"There is no evidence in this case by which the defendants can be held responsible for the placing of a pinch bar upon the front end of the engine, and if you do not find by a preponderance of the evidence some other acts or omissions constituting negligence on the part of the defendants in this action, then you must find for the defendants."

The court did not give the instruction requested, either in form or substance, but did give an instruction as follows:

"If you further believe from the evidence that the foreman told the plaintiff to ride upon the front part of the engine and directed him so to do, then the plaintiff in this case would have a right to assume and believe that it would not be an unsafe place to ride, and if it was made unsafe to ride by reason of any act of the foreman, such as the placing thereon of pinch bars or frogs by the foreman or superintendent in charge, and that this became the proximate cause of his injury, then the master would be responsible in compensatory damages."

The instruction given in effect submitted to the jury the question whether or not the place where the plaintiff was rid-

ing was made unsafe by the act of the foreman in placing, or
causing to be placed, the pinch bar where it was. The ques-
tion as to who placed the pinch bar on the foot board is vital,
for if it were an act of the plaintiff himself or of any of his
fellow workmen, and was the proximate cause of the acci-
dent, there would be no liability on the part of the appellants.
As above stated, there was no evidence as to how the pinch
bar came to be where it was, except that of the foreman, who
testified that the plaintiff himself placed it there. This
would not be sufficient to justify submitting to the jury the
question as to whether the foreman either placed or caused it
to be placed where it was. The jury could not find that the
act of placing the pinch bar upon the foot board was charge-
able to the foreman, and thereby to his principals, without
indulging in guess and conjecture. Verdicts must be based
upon evidence and not upon surmise. In *Jock v. Columbia &*
*Puget Sound R. Co.*, 53 Wash. 437, 102 Pac. 405, it is said:

"Outside of the fact that Williams testified positively that
he did not remove the stake, the testimony of the respondent
did not make a *prima facie* case on that proposition, and the
jury could not reach the conclusion that Williams did remove
the stake, without resorting to guesswork and surmise. Of
course, it is well established that the jury is the judge of the
credibility and reasonableness of the testimony. But it is just
as well established that verdicts must be based on facts proven,
and not on speculation and surmise."

It is error to submit a vital issue to the jury when there is
no evidence pertaining thereto, and a specific request has
been made to withdraw the same from the jury's considera-
tion. The requested instruction should have been given. In
*Tergeson v. Robinson Mfg. Co.*, 48 Wash. 294, 93 Pac. 428,
it is said:

"This instruction does not cure the error above mentioned,
as it submits an issue not authorized by the evidence tending
to confuse the jury. Had the jury, in answer to special in-
terrogatories, found (1) that the appellant had not failed to
properly instruct or warn the respondent, (2) that it had

performed its duty in furnishing a proper safeguard for the top head of the machine, but (3) that the belt shifter was not a proper appliance for the purpose for which it was intended, a general verdict for respondent, upon the evidence before us, would not be permitted to stand.  Yet we are unable to say that the jury did not reach its verdict in this manner."

The judgment will be reversed, and the cause remanded for new trial.

MOUNT, MORRIS, and ELLIS, JJ., concur.