[No. 35378.  Department Two.  September 7, 1961.]

CARL E. JABLINSKY *et al.*, *Appellants*, v. CONTINENTAL PACIFIC LINES, INC., *Respondent.**

*Henry W. Parrott* and *Clarke, Clarke, Albertson & Bovingdon*, for appellants.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *John C. Patterson*, for respondent.

HILL, J.—This seems to be a case of first impression, dealing with liability by a contract carrier for injuries sustained

*Reported in 364 P. (2d) 793.

by a United States mail clerk in the operation of a highway post office, commonly called a "Hi-Po." (We shall use that appellation throughout the opinion.)

Each "Hi-Po" is built to the specifications of the United States Post Office Department and resembles a large bus. The one involved in this case was thirty-five feet in length, ninety inches in interior width, and in excess of seventy inches from floor to ceiling. Midway of the bus are doors directly opposite each other; the doorways are each thirty-four inches in width. The doors are normally closed when the "Hi-Po" is in motion. In the area forward from these doors the clerks "work" the mail; the area aft is used for storage. While exclusively used for the United States Post Office, the vehicle was actually owned by the defendant and it employed the driver. The driver's compartment is entirely separate from the mail compartment, though there was a door built of steel mesh between the two compartments and a mirror in the driver's compartment enabling him to see into the interior of the mail compartment.

The "Hi-Po" carried two mail clerks, the senior of whom was designated the "clerk in charge" and controlled all operations including when to start and where to stop. On the day the plaintiff was injured, Harold J. Keeler, the clerk in charge, and the plaintiff were the postal crew; and Charles Brown was the driver furnished by the defendant. The "Hi-Po" was operating between Portland and Seattle, making twelve intermediate stops. It had left the Portland post office at 8:00 a.m., and proceeded to the mail-loading facilities maintained at the Union Railway Station. Its scheduled-leaving time there was 8:20, but the train with the mail from the east was late. At 8:30 Keeler told Brown,

". . . We will wait until 8:40 and . . . if there is no sign of the mail coming up on the truck, . . . we will leave. . . ."

At 8:40 Brown, without further direction from Keeler and without notice to either of the mail clerks, started the "Hi-Po" on its way. It is the plaintiff's contention that, exasperated at the delay, Brown started the "Hi-Po" while

one of the midway doors was still open; and, as the plaintiff was attempting to shut the door, Brown made a sharp turn at speed which was excessive under the circumstances, and a stack of mail in sacks (seven feet in height) fell over and many of the sacks fell on the plaintiff causing the injuries for which damages were claimed.

The defendant denied any negligence on the part of its driver and alleged contributory negligence.

The jury found for the defendant; and the plaintiff appeals, contending that there was no showing of contributory negligence; that the court's instruction on that issue should not have been given, and that an instruction should have been given stating that he was entitled to the highest degree of care commensurate with the practicable operation of the vehicle in which he was riding.

The issue of negligence was clearly for the jury, and it may have reached its verdict on the basis of the plaintiff's failure to prove negligence. However, the jury was also instructed on the issue of contributory negligence and may have concluded that, though the defendant's driver was negligent, the plaintiff was contributorily negligent.

The trial court eliminated two of the four-claimed acts of contributory negligence and permitted the jury to consider as claimed acts of negligence: (1) failing to properly stack sacks of mail; and (2) failing to close the door at the proper time.

It was error to submit the latter as a claimed act of contributory negligence. The door being open had nothing at all to do with the falling of the stack of mail in sacks. It was not a proximate cause. It was the plaintiff's attempt to close the door, after the "Hi-Po" started, which put him at the place where the sacks of mail landed when the stack fell; but he had a right to be at any place in the mail compartment of the "Hi-Po" at any time.

A new trial must be granted because of the trial court's error in including for the jury's consideration the failure to close the door at the proper time as a claimed act of contributory negligence. *Adkisson v. Seattle* (1953), 42 Wn. (2d) 676, 258 P. (2d) 461; *Hines v. Neuner* (1953), 42 Wn.

(2d) 116, 253 P. (2d) 945; *Copeland v. North Coast Transp. Co.* (1932), 169 Wash. 84, 13 P. (2d) 65; *Storm v. Goldberg* (1931), 165 Wash. 36, 4 P. (2d) 1104; *Burge v. Anderson* (1931), 164 Wash. 509, 3 P. (2d) 131; *Brown v. Chicago Milwaukee & St. Paul R. Co.* (1923), 125 Wash. 463, 217 Pac. 16; *Rastelli v. Henry* (1913), 73 Wash. 227, 131 Pac. 643; *Tergeson v. Robinson Mfg. Co.* (1908), 48 Wash. 294, 93 Pac. 428.

■ Whether there was error in submitting the improper stacking of the sacks of mail, as a possible act of contributory negligence, presents a close question.

No one testified that there was anything improper in the way the plaintiff had stacked the sacks of mail. The defendant's argument is that since the stack, which fell, did not quite reach the ceiling, there should have been an empty mail sack or something placed between the top of the stack and the ceiling of the "Hi-Po" to give the stack greater stability. There was no evidence that anything was available for that purpose; there was no evidence that, if the stack had been so braced, it would not have fallen. Our view is that the defendant failed to prove any contributory negligence in the stacking of the mail sacks, and unless substantial evidence of improper stacking is submitted on a retrial, there should be no instruction on contributory negligence.

■ Because of the possibility of a retrial we must consider another contention of the plaintiff-appellant, *i.e.*, that the jury should have been instructed that he was entitled to the highest degree of care, commensurate with the practicable operation of the vehicle, and the instruction—that the defendant owed the plaintiff the duty of ordinary and reasonable care—was, therefore, inadequate.

By the overwhelming weight of authority, railway-mail clerks are considered to be passengers on trains and, as such, entitled to the highest degree of care commensurate with the practicable operation of the train on which they are riding.

The basis of this rule seems to be that mail clerks are

carried on common carriers with other passengers and, therefore, are entitled to the same protection and consideration for their safety. (This is the reason most frequently given, and for an excellent statement see *Yarrington v. Delaware & Hudson Co.* (1906), 143 Fed. 565.) That reason does not apply in this case, because the defendant is not a common carrier but a contract carrier and is not in the business of carrying passengers. It is conceded that the defendant's driver was under the direction of the clerk in charge of the highway-post-office bus as to when to start, routes to follow, and when and where to stop. (No issue has been raised as to the applicability of the "borrowed servant" doctrine to this type of case.)

It is urged that the basis of the right to passenger status and the highest degree of care is statutory, *i.e.*, 39 U. S. C. A. (Sup.) § 523 [This statute has been revised, re-enacted, and recodified as 39 U. S. C. § 6203 (e), as of September 2, 1960. See U. S. Code Cong. & Ad. News, September 15, 1960.], which reads:

"Free transportation for persons in charge of mails.

"Every railroad company carrying the mails shall carry on any train it operates and without extra charge therefor the persons in charge of the mails and when on duty and traveling to and from duty, and all duly accredited agents and officers of the Post Office Department and the Railway Mail Service and post-office inspectors while traveling on official business, upon the exhibition of their credentials. (July 28, 1916, c. 261, § 1, 39 Stat. 419.)"

Support of this proposition is found in certain state court decisions: *Pittsburgh, Cincinnati, Chicago & St. Louis R. Co. v. Jones* (1925), 82 Ind. App. 569, 146 N. E. 864; *Southern R. Co. v. Utz* (1912), 52 Ind. App. 270, 98 N. E. 375; *Hoskins v. Northern Pac. R. Co.* (1909), 39 Mont. 394, 102 Pac. 988.

A later enactment, after planes and busses were utilized for the handling of the mail (39 U.S.C.A. (Sup.), § 507 [This statute has been revised, re-enacted, and recodified as 39 U.S.C. § 6433, as of September 2, 1960; see U. S. Code

Cong. & Ad. News, September 15, 1960.]), is in almost identical terms. It reads:

"Every individual or company carrying the mails shall carry on any vehicle it operates and without extra charge therefor the persons in charge of the mails and when on duty and traveling to and from duty, and all duly accredited agents and officers of the Post Office Department and post-office inspectors while traveling on official business, upon the exhibition of their credentials. (July 11, 1940, c. 582, § 3, 54 Stat. 757.)"

If § 523, *supra*, is the basis for extending to railway-mail clerks the status of passengers and, hence, entitling them to the highest degree of care, then it would follow that § 507, *supra*, should be the basis for extending it to mail clerks in highway post offices.

The supreme court of the United States, however, has expressly disclaimed any such effect for § 523, *supra*, saying that it neither makes a postal clerk a passenger nor deprives him of that status. *Price v. Pennsylvania R. Co.* (1885), 113 U. S. 218, 28 L. Ed. 980, 5 S. Ct. 427. In that case the court held that a similar statute (to those with which we are here concerned) made it the duty of the company to carry an agent of the post-office department without extra charge, but it no more made him a passenger than it did the mail matter of which he had the care. The court said (p. 221):

"The person thus to be carried with the mail matter, without extra charge, is no more a passenger because he is in charge of the mail, nor because no other compensation is made for his transportation, than if he had no such charge, nor does the fact that he is in the employment of the United States, and that defendant is bound by contract with the government to carry him, affect the question. . . . The statutes of the United States which authorize this employment and direct this service do not, therefore, make the person so engaged a passenger, or deprive him of that character, . . ."

The foregoing is quoted and approved in *Bankers Mut. Cas. Co. v. Minneapolis, St. Paul & Sault Sainte Marie R. Co.* (1904), 192 U. S. 371, 48 L. Ed. 484, 24 S. Ct. 325, and in

*Martin v. Pittsburgh & Lake Erie R. Co.* (1906), 203 U. S. 284, 51 L. Ed. 184, 27 S. Ct. 100.

We are satisfied that the supreme court of the United States has, by its construction of comparable statutes, foreclosed any contention whereby the plaintiff can claim the same relationship to the carrier as a passenger for hire on the basis of § 507, *supra*.

The trial court properly instructed on the theory of reasonable and ordinary care and did not err in refusing to instruct the jury that the defendant owed the plaintiff the highest degree of care commensurate with the proper operation of its vehicle.

For error, in the instructions relating to contributory negligence, the judgment of dismissal is set aside and a new trial is granted.

FINLEY, C. J., WEAVER, ROSELLINI, and FOSTER, JJ., concur.