[No. 20364.   Department Two.   March 3, 1927.]

CHARLES W. JOHNSON, *Administrator of the Estate of Gustave Quarnstrom, Deceased, Appellant,* v. GRAYS HARBOR RAILROAD & LIGHT COMPANY, *Respondent.*[1]

[1] ELECTRICITY (5)—INJURIES INCIDENT TO USE—DEFECTS CAUSING INJURY—NEGLIGENCE—PRESUMPTIONS—EVIDENCE. The presumption of negligence from a death resulting from contact with the loose end of a live wire lying in a public street is overcome by proof that the break in the wire was caused by an unprecedented storm, with the highest wind velocity in history, notwithstanding every precaution possible.

[2] APPEAL (389) — REVIEW — AMENDMENTS REGARDED AS MADE — FAILURE TO PLEAD AFFIRMATIVE DEFENSE. Error cannot be predicated upon allowing defendant to prove an affirmative defense not pleaded, where, after objection, evidence thereon was introduced by both parties and the issue fully tried out, and no continuance asked or surprise claimed, since the answer will be deemed to have been amended.

[3] ELECTRICITY (5)—INJURIES INCIDENT TO USE—ACTIONS—INSTRUCTIONS. In an action for wrongful death caused by a live wire lying in a public street, it is not error to instruct the jury that, if the power line was constructed in accordance with the state laws, compliance with the law would constitute proper construction, where the evidence showed standard construction complying with the law and there was no evidence to the contrary or that anything else should have been done.

Appeal from a judgment of the superior court for Grays Harbor county, Campbell, J., entered March 30, 1926, upon the verdict of a jury in favor of the defendant, in an action for wrongful death. Affirmed.

*John J. Monahan* and *Charles W. Johnson,* for appellant.

*Theodore B. Bruener,* for respondent.

ASKREN, J.—Late Christmas eve and early Christmas morning of 1923, there was a severe storm along the

[1]Reported in 253 Pac. 819.

North Pacific coast. In the city of Aberdeen, Washington, it reached unusual severity, being greater in its destruction than any in years, not excluding the storm in 1921, that leveled great areas of state timber in the Olympic peninsula.

Between midnight and four o'clock in the morning, plate glass windows in many stores were broken out, windows smashed in homes, chimneys demolished, signs destroyed, telephone wires put out of commission, and power wires broken and service materially interfered with.

One of the vessels lying in the harbor was the "Siskiyou," on which one Gustave Quarnstrom was second mate. He left the steamer about 5:30 Christmas eve, to go to the business portion of the city. Between 5:00 and 6:00 the following morning he was found lying in one of the public streets in Aberdeen, his body partly in water, with a live electric power wire belonging to the defendant corporation touching his foot. Life was extinct. When he met his death no one knows, but it is established that death was caused by contact with the electric wire.

Plaintiff was appointed administrator and commenced suit against the defendant company for Quarnstrom's death, alleging negligence in the placing and maintenance of its power line, which came to the ground and which Quarnstrom came in contact with. The answer was a general denial, coupled with an affirmative defense of contributory negligence.

The cause came on regularly for trial and the jury returned a verdict for the defendant. Plaintiff's motion for judgment notwithstanding the verdict and for a new trial being denied, this appeal followed.

[1] It is first urged that the court erred in overruling the motion for a directed verdict, and likewise

the motion for judgment notwithstanding the verdict. This assignment seems to be predicated upon the fact that appellant does not believe respondent met the burden of showing that there was no negligence upon its part. It is conceded that, when appellant's evidence showed that the death resulted from contact with a live wire which had a loose end lying in a public street, a *prima facie* case was made, and that respondent must then assume the burden of showing that the result was not caused by its own negligence. The jury having found by its verdict that the respondent met the burden, our only inquiry then is whether there was evidence from which the jury could rightly make such a finding. An examination of the evidence discloses that the respondent met the burden by evidence almost conclusive in its character. The testimony showed that its plant and system were in proper condition; that the cause of the wire falling to the street was the unusual severity of the storm which whipped the wires together causing them to arc and flame, burning through the weather-proofing and melting the copper wire itself; that the respondent's general manager and all employees that could be summoned were on duty from the time a realization came to them of the destructiveness of the storm, and they endeavored in every way to properly safeguard and protect individuals and property; that the storm was the most severe in the history of the city, and that, in the region covered by the weather bureau at Seattle, the records showed the highest wind velocity since the establishment of the United States weather bureau there in 1892. We need not detail the evidence further. It was so complete that, if the verdict had been contrary, it would have been against the weight of the evidence, and the trial court would have no doubt granted a new trial.

[2]  The next question urged is that the court erred in permitting the respondent, under its general denial, to offer evidence showing that the breaking or burning of the wire was caused by the storm—an agency over which it had no control—and which, if true, exonerated it from the charge of negligence.  It is said that "an act of God is a defense which must be pleaded."  A very interesting argument is presented by both sides upon this question, but we deem it unnecessary to decide that point here, as we are convinced that respondent's claim that appellant is not in a position to urge this point is well taken.  On January 19, 1926, pursuant to a stipulation, counsel for both sides being present, the deposition of one B. M. Summers, meteorologist in charge of the United States weather bureau at Seattle was taken.  The entire matter covered in the deposition referred to the storm in question, and great stress was laid therein concerning the point as to whether the storm was an unusual one and not of the kind to be expected.  On the same day, a stipulation was signed for the introduction in evidence of a certified copy of the report of the weather bureau located at North Head, Washington, showing the velocity and extent of the wind during the storm.  When appellant's attorney made his opening statement to the jury he referred to this issue in the following manner:

"That night there came up a severe storm.  Some of you jurors probably remember it and possibly all of you.  But that storm raged its severest about 4 o'clock in the morning.  Quarnstrom was killed about 1.10 or 1:15 in the early morning.  You might say 1:15 at night. It was 1:15 A. M.  At that time the storm was not one of unusual severity and not one that could not have been anticipated.  The power company's wire was down then and the storm was raging, of course.  Mr. Quarnstrom at the time of his death was a married man  .   .  .  The power company in this case did not use ordi-

nary care. The wires were loose and in any storm would flash and swing together and when they did they became weak, and in this case the wire fell down."

When the opening statement for appellant was concluded, the attorney for respondent made his statement to the jury, and in it he immediately took issue upon the question of the storm and its severity. Objection was made by appellant upon the ground that the pleadings did not allege the storm as a defense. After colloquy and argument of counsel, in which it was pointed out to the court that the depositions taken in the case by respondent were upon the theory that the storm was of unusual severity, and that appellant knew of this fact, the court overruled the objection. Thereafter all the parties proceeded to try out the question as if properly before the court. Witnesses for appellant, as part of its case in chief, both on direct and cross-examination testified as to the severity of the storm. No objections were made by appellant to this line of testimony, and each side was permitted to go into it as fully as they wished.

Assuming, therefore, that respondent should have pleaded the act of God as an affirmative defense, the permission of the court to allow it to be fully litigated must be considered by us as though a formal amendment had been allowed by the court. When appellant knew that this question was held by the court to be properly raised and therefore an issue to be litigated, no request was made for a continuance upon the ground of surprise or otherwise. Indeed, with knowledge of the depositions taken there could hardly have been any surprise. The question having been fully litigated, it would be an idle and futile thing for the case to be returned for the purpose of hearing the same testimony. This question is not new in this state.

In *Skibsaktieselskapet Bestum III v. Duke*, 131 Wash. 467, 230 Pac. 650, a like point was raised and disposed of as follows:

"Passing to the question of the admissibility of the evidence to which objection was made, the principal controversy is over the evidence introduced to show the repudiation of the contracts by the plaintiff. The first branch of the objection to the evidence is that the defendants did not plead in their answer a revocation of the contracts. The trial court seemingly held the evidence admissible under the general denials in the answer, and cases are cited to us which sustain its holding. But whether these represent the better opinion, we do not think we need inquire. If there was a defect in the answer it was a defect capable of cure by amendment, and this court is admonished by the statute to consider all amendments as made which could have been made. (Rem. Comp. Stat., § 1752) [P. C. § 7336]. Under the cited section will be found our cases wherein we have applied the rule, and no repetition of them is necessary here. There are, it is true, certain exceptions to the rule, as for example, where the rule operates to prevent a party from presenting his case. But nothing of this sort is here present. The plaintiff was given all the opportunity he desired to meet the evidence."

Again, in *Hahn v. Brickell*, 135 Wash. 189, 237 Pac. 305, where a complaint based on fraud failed to show that the plaintiff had relied on the representations made in the sale of a rooming house, and objection was made to the introduction of evidence upon the ground that the complaint failed to state actionable fraud, yet both parties tried out the issue, we said:

"That the complaint was defective in the respect mentioned cannot be denied. It is well settled that, where fraud is charged, the complaining party must allege and prove reliance upon the misrepresentations. The demurrer should have been sustained, as well as

the objection to the introduction of evidence because the complaint was defective. It does not follow, however, that the judgment should be reversed for this reason. The defect in the complaint was such as could have been cured by a trial amendment without prejudice to the appellant. Upon the trial neither party was denied the right to introduce evidence because of the defect and the case was completely tried, apparently without prejudice on account of the defective complaint. In such a case it would appear that there could not be any good reason to reverse the judgment and send it back for a new trial where, after the complaint having been amended, in all probability exactly the same evidence would be introduced."

We affirmed this rule again in *Hubbard v. Hartford Fire Ins. Co.,* 135 Wash. 558, 238 Pac. 569, 240 Pac. 565, and these cases are controlling on the point raised here.

[3] Complaint is also made of an instruction given by the court wherein the jury were told that, if they found the power line in question was constructed in accordance with the law of the state of Washington, then such compliance with the law would constitute, as a matter of law, proper construction. The objection to this instruction appears to be that it in effect excused respondent from exercising the highest degree of care required under all of the circumstances. The evidence showed standard construction complying with the law, and no evidence of any kind was offered to show that it did not comply, or that anything additional should have been done in the exercise of the proper degree of care. Under this state of the evidence, we cannot conclude that any error lies in the instruction. Appellant cites *Haas v. Washington Water Power Co.,* 93 Wash. 291, 160 Pac. 954, where we held that the trial court should have permitted testimony showing that the defendant in that case should have used lightning arresters over its transformer to prevent excessive cur-

rent entering the plaintiff's house. It was said in the course of the opinion:

"While it is true that the act of 1913, Laws of 1913, ch. 130, p. 397 (Rem. 1915 Code, § 4976-1 *et seq.*), prescribes certain rules for the construction of electrical lines, that statute does not attempt to define every detail of construction, and we are inclined to hold that a compliance with the statute is not evidence of proper construction, except in those particulars covered by the statute."

It will be seen that we there held that compliance with the statute was, in effect, evidence of proper construction "in those particulars covered by the statute."

Other instructions were excepted to upon the ground that they submitted to the jury the issue of whether the act of God was responsible for the accident. Since we have held that the issue was properly before the jury, these assignments of error are thus disposed of.

Some other questions are raised, but after due examination, we find them not well taken.

The judgment is affirmed.

MACKINTOSH, C. J., FRENCH, PARKER, and TOLMAN, JJ., concur.