[No. 6-40064-2.    Division Two.    October 16, 1969.]

CLEMENT ZUKOWSKY *et al., Appellants,* v. GEORGE BROWN *et al., Respondents.*

*McCormick, Hoffman, Rees & Arnold* and *Paul Hoffman, Jr.,* for appellants.

*Neal, Bonneville, Hughes & Viert* and *William G. Viert,* for respondents.

**REVIEW GRANTED BY SUPREME COURT.**

PETRIE, J.—This is a tort action instituted by Clement and Crystal Zukowsky, husband and wife, against George and Marilyn Brown, husband and wife, to recover damages allegedly sustained by plaintiff wife on June 19, 1966, when a helm seat on which she was sitting collapsed while she was a guest passenger aboard defendant's motorboat cruising in navigable waters in Puget Sound.

Plaintiffs have appealed from a judgment based upon a general verdict of a jury in favor of defendants. Plaintiff husband, Clement Zukowsky, died subsequent to filing the appeal; and Crystal Zukowsky, administratrix of the estate of Clement Zukowsky, deceased, has been substituted herein as his personal representative. We shall hereafter refer to Crystal Zukowsky as plaintiff and to George Brown as defendant.

Plaintiff has noted 14 separate assignments of error, which, however, may be appropriately grouped into four major categories: (1) the court should not have instructed the jury on the definition of contributory negligence and on the doctrine of comparative negligence; (2) the court should have given an instruction on the doctrine of res ipsa

loquitur; (3) the court should have given more explicit instructions on the standard of care which a boat owner owes to guest passengers; and (4) as part of the res gestae, the court should have permitted a witness to relate an otherwise hearsay statement attributed to defendant's teen-age son.

The record fairly reflects the following factual pattern: On June 16, 1966, defendant was the owner of a 34-foot cabin cruiser with a flying bridge. On the day in question, plaintiff husband and wife were invited to, and did, join defendant husband and wife—together with another couple —on a cruise in Puget Sound waters off Anderson Island, Washington. They were traveling at cruising speed in calm water.

For a period of time variously estimated at from 5 to 20 minutes, plaintiff Crystal Zukowsky, sat on the port helm seat—the seat collapsed—she fell approximately 2 feet to the area upon which the base of the seat had been attached —and allegedly sustained injuries. At the time of the mishap she was approximately 60 years of age and had never been aboard defendant's boat.

Unfortunately, a somewhat lengthy word picture of the seat is necessary to appreciate the nature of the mishap. The port helm seat, a collapsible type seat known as an EEz-In seat, was first installed on the flying bridge by defendant in 1960. It has two separate parts which, for want of a better nomenclature, we shall call the "seat assembly" and the "base assembly".

The "base assembly" is mounted on a ½-inch plywood flooring. The assembly consists of two major parts, (1) a base flange (or bracket) which is attached to the plywood by two automotive-type, cadmium-plated, steel screws of either ¾ inch or ⅞ inch length, and (2) an aluminum, cylindrical post (or stanchion) approximately 17 inches in length, which is so attached to the flange by a pivot such that the post may be moved through an arc of 180°, stem to stern.

The "seat assembly" is composed of two major parts, (1)

a seat (and folding back rest), which is hinge-mounted to the inside port bulkhead of the flying bridge such that the seat may be raised to a horizontal position when in use and may be lowered through a 90° arc so that it basically lies against the inside bulkhead when not in use, and (2) an aluminum, cylindrical post (or stanchion) approximately 8 inches in length, which pivots on a flange attached to the underside of the seat, such that the post may be moved through an arc of 180° athwart the boat.

The seat post and the base post are so constructed that, when properly positioned for use, the seat post telescopes over the raised base post with an overlap variously estimated at from 1½ inches to 2 inches. When the seat is in use, the two posts are vertical, perpendicular to the plane of the plywood flooring, with the seat approximately 23 inches above the flooring.

After the seat collapsed, one of the steel screws, which had attached the base flange to the plywood, was still in the plywood; its head had been broken off and the break was "bright". The other screw was no longer in the plywood, but was found immediately after the mishap with wood attached to its threads; the wood was described as "old" or "didn't look like fresh"; and the plywood around the screw hole was neither torn nor splintered. Plaintiff, Clement Zukowsky, indicated that the two posts had become separated; the seat assembly had resumed its normal "down" position; the base flange, although now pulled loose from the plywood, had come to rest on its end only ½ inch from where it had been attached to the plywood; and the base post (still attached to the base flange) was lying on the plywood with its top pointed aft at a slight angle.

Mrs. Zukowsky explained her actions immediately prior to her fall as follows:

Q. And Picture No. 1 on the exhibit shows the seat as it is set up, is this right? A. Yes, and Mr. Brown would be opposite me, in the seat opposite. Q. He would be over here, right? A. There must be, I haven't seen the windshield, but there must be a little ledge there, and I took my hands and I pushed myself, because that seat is sta-

tionary, it doesn't move? Q. Right. A. And I was facing Mr. Brown and the other people in the back of the boat, but when Mr. Brown asked me to look out the window I took a hold of the windshield and turned myself around so I could see out the front of the windshield, and that is when I fell. Q. Were you turning to the front when you fell? A. I started to turn, yes. Q. And you had been kind of turned facing people in the back? A. Yes.

Several other witnesses described Mrs. Zukowsky's turning movement as "fairly fast", or "rather quickly", but not "excessively sudden". She testified her feet were dangling, but "twisted around each other". One witness, who was not looking at her legs when she fell, stated that some time prior to her fall, "she pulled them around this post that holds the seat".

Plaintiff's expert witness acknowledged that just shifting of weight on the seat would lift it; that "it would be more liable to lift it just screw height"; and further, that lifting the seat "the length of the telescoped part" would "depend somewhat on the bind on it".

Under this state of the record, we find it difficult to find substantial evidence, either that any negligence of the defendant proximately caused the mishap or that any action of the plaintiff, which fell below the standard of care required of her, proximately caused the seat to collapse.

Jurors, of course, may not speculate as to possibilities. *Girson v. Carter*, 76 Wn.2d 18, 454 P.2d 392 (1969). However, they may make justifiable inferences from circumstantial evidence to find negligence or proximate cause. *Hernandez v. Western Farmers Ass'n*, 76 Wn.2d 422, 456 P.2d 1020 (1969). In such instances, circumstantial evidence is sufficient to establish a prima facie case of negligence if it affords room for men of reasonable minds to conclude that there is a greater probability that conduct relied upon was the proximate cause of the injury than there is that it was not. *Wise v. Hayes*, 58 Wn.2d 106, 361 P.2d 171 (1961). It is only the rare case when the court is justified in withdrawing from the jury the issue of contributory negligence. *Bauman v. Complita*, 66 Wn.2d 496, 403 P.2d 347 (1965).

In the instant case, the facts are basically exoteric in nature. Hence they are quite suitable for jury comprehension. In weighing the probabilities, the jury might well have concluded—from the plaintiff's own version of her actions (augmented by embellishments supplied by other witnesses) together with the opinions expressed by her expert—that the two telescoping vertical posts became completely separated because of the plaintiff's own turning actions—and that because of such separation, the seat collapsed and she fell.

■ Such a conclusion would satisfy the element of proximate cause, but would it supply the element of contributory negligence—breach of her duty? Not every action by a plaintiff, even though it be a cause of the mishap, can be characterized as negligent action. *Hughey v. Winthrop Motor Co.,* 61 Wn.2d 227, 377 P.2d 640 (1963).

■ Plaintiff's duty as a guest passenger in defendant's boat is not one which is specifically defined or fixed. Rather, such duty is usually defined as a duty to use that degree of ordinary care which a reasonably prudent person would exercise for her own safety under the existing circumstances.

At the time of the injury, plaintiff was approximately 60 years of age, had never before been on defendant's boat, and, so far as the record reflects, had no knowledge that she was sitting on a collapsible type seat. Her legs could not have reached the floor—and there was no place to have put them except to either let them dangle or wrap them around the post. Is it a breach of duty to sit sideways in a chair, to twist your body and turn "fairly fast" while holding on to a ledge or windshield? We think it quite the normal type of action in which any reasonably prudent person would expect to engage while aboard a motorboat traveling at cruising speed in calm water.

■ There was neither substantial evidence nor circumstance in the record to support a conclusion that Mrs. Zukowsky's conduct under existing circumstances fell below

the standard to which she should have conformed for her own protection. The instructions on contributory and comparative negligence should not have been given, and it was error to have submitted those issues to the jury. *Hughey v. Winthrop Motor Co., supra.*

Defendant contends that even though it was error to have instructed the jury on these issues, the jury's general verdict in favor of the defendant rendered such matter moot. His reasoning is that under the instructions, the jury either (1) found no negligence on the part of defendants or (2) found that plaintiff's comparative negligence was 100 per cent. Under either possibility, the jury necessarily determined that the defendant's chargeable share of the negligence added up to zero. Plaintiff's counsel has referred to such argument as a logical non sequitur. We agree. Each party to an action is entitled to have instructions presented to the jury which properly reflect the law which applies to the proven facts—and instructions which do not meet that test should not be given.

Notwithstanding our determination that this case must be remanded for retrial, we deem it appropriate to express our views on other assignments of error which might recur.

■ Plaintiff assigns error to the court's failure to instruct the jury on the doctrine of res ipsa loquitur. The elements necessary to invoke this doctrine have been described as follows:

> (1) [T]he accident or occurrence producing the injury is of a kind which ordinarily does not happen in the absence of someone's negligence, (2) the injuries are caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the injury-causing accident or occurrence is not due to any voluntary action or contribution on the part of the plaintiff.

*Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.,* 62 Wn.2d 351, 359, 382 P.2d 518 (1963).

It is obvious that the facts in this case do not meet the third criterion. We need not consider the other criteria. The court properly refused to instruct the jury on the doctrine of res ipsa loquitur.

Plaintiff next assigns error to the court's failure to give three of her proposed instructions which, she contends, more definitively specify the standard of conduct for the owner of a boat, failure of which would constitute negligence.

We have carefully reviewed plaintiff's proposed instruction 14 and find that it merely recites what the court had already sufficiently covered in other instructions, namely, that failure of the defendant to exercise reasonable care under the circumstances would have constituted negligence on his part.

Plaintiff's proposed instruction 15 is an incorrect statement of the law. It would have required the jury to "find for the plaintiff and against the defendant" if the jury merely found the defendant negligent in one of three fashions, without regard to whether or not any such negligent act was a proximate cause of the injury. The court properly refused to present it to the jury. *See v. Willett,* 61 Wn.2d 681, 379 P.2d 915 (1963).

Plaintiff's proposed instruction 23 follows:

> The owner of a vessel owes to every person lawfully on board by express or implied invitation, a general duty to provide reasonable security against danger to life and limb, and to exercise ordinary care to protect him from injury, and is answerable for any injury suffered by such person on account of the breach of that duty by himself or on the part of those in charge of the vessel. The owner must keep free from danger the parts of the vessel which the visitor may reasonably be expected to pass over, or warn him of danger known to the owner but unknown to the visitor, and is answerable for any injury caused by default in this regard.

This instruction is a recital of the general proposition set forth in Annot., 63 A.L.R.2d 343 (1959) entitled, "Liability of owner or operator of motorboat for injury or damage". See section 3 [d] at 355. We find no fault with it as a general statement of the standard of care required of the owner of a motorboat. Its application in toto to the factual situation in the case at bar is suspect, however, since there

is no evidence in the record of a "danger known to the owner". We do not consider the fact that the helm seat was a collapsible seat constituted a "danger" per se. Failure to give this instruction did not constitute error.

Finally, plaintiff assigns error to the court's refusal to permit a witness to recite a statement allegedly made by defendant's teen-age son within 5 minutes after the seat collapsed. Defendant's son was not aboard the motorboat, but rather, was in a skiff or smaller boat which had generally been traveling in the vicinity of the defendant's boat —on some occasions at least within eyesight of persons aboard the boat. Purportedly, the skiff came alongside the motorboat—or at least within the sound of voice to persons aboard. After inquiring as to what happened aboard the boat, defendant's son was advised that the seat had collapsed. His response is reported to have been, "Well, that doesn't surprise me, that happened twice before".

Obviously, if such a statement was properly a part of the res gestae its exclusion could have constituted serious error, assuming that further embellishment of the statement does not render it irrelevant.

█ Both parties, in their briefs, rely upon the six elements governing the admissibility of such statements as set forth in *Beck v. Dye*, 200 Wash. 1, 92 P.2d 1113, 127 A.L.R. 1022, (1939)—and recently reasserted in *Johnston v. Ohls*, 76 Wn.2d 398, 457 P.2d 194 (1969), as follows:

"(1) The statement or declaration made must relate to the main event and must explain, elucidate, or in some way characterize that event; (2) it must be a natural declaration or statement growing out of the event, and not a mere narrative of a past, completed affair; (3) it must be a statement of fact, and not the mere expression of an opinion; (4) it must be a spontaneous or instinctive utterance of thought, dominated or evoked by the transaction or occurrence itself, and not the product of premeditation, reflection, or design; (5) while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation; and (6)

it must appear that the declaration or statement was made by one who either participated in the transaction or witnessed the act or fact concerning which the declaration or statement was made."

*Beck v. Dye, supra* at 13.

We are concerned primarily with the sixth element. The declarant was not a witness to the event, but was he "one who . . . participated in the transaction . . . concerning which the declaration or statement was made"?

In *Johnston,* the court emphasized at 565:

The crucial question in all cases is whether the statement was made while the declarant was still under the influence of the event to the extent that his statement could not be the result of fabrication, intervening actions, or the exercise of choice or judgment.

In no sense of the word can it be said that the defendant's teen-age son was "under the influence of the event". He was neither a witness nor a non-witness participant. He was so far removed from the event that he had to inquire subsequently as to what transpired. The court properly refused to admit the declarant's statement through another witness.

The judgment is reversed, with direction to grant a new trial.

ARMSTRONG, C. J., and PEARSON, J., concur.

---

Petition for rehearing denied November 19, 1969.