[No. 41420. En Banc. September 2, 1971.]

CLEMENT ZUKOWSKY *et al., Respondents,* v. GEORGE BROWN *et al., Petitioners.*

*Neal, Bonneville, Hughes & Viert,* by *William G. Viert,* for petitioners.

*Paul Hoffman, Jr.* (of *McCormick, Hoffman, Rees & Arnold*), for respondents.

NEILL, J.—Plaintiffs appealed from a judgment of dismissal following a verdict for defendants in this personal injury action. The Court of Appeals reversed and remanded for a new trial. *Zukowsky v. Brown,* 1 Wn. App. 94, 459 P.2d 964 (1969).

We granted defendants' petition for review which challenges two of the conclusions of the Court of Appeals. However, plaintiffs' answer to that petition raises for review each assignment of error set forth in their opening brief in the Court of Appeals. By reason of this answer, we have considered all assignments of error presented there.

Plaintiff wife was injured while a guest on defendants' pleasure boat during a cruise on waters of Puget Sound. She was invited by defendant husband, operator of the boat, to sit on a seat across the passageway from his position at the helm. The seat was too high to permit her feet to touch the deck; so her legs were either dangling or wrapped around the supporting post. She had been seated 5 to 20 minutes when she turned rather suddenly on the seat to speak to her husband. The seat collapsed, throwing her to the deck, and causing the injuries for which redress is sought.

The seat was a bench type (nonswivel) with folding back. It was attached to the bulkhead by hinges permitting it to fold against the bulkhead when not in use. To use the seat, it is lifted to a horizontal position and supported by a telescoping metal post. This post is in two sections: one section, permanently attached to the underside of the seat, is designed to slip into the section attached to the deck by two screws through a flange on the base of the post. This

flange is connected to the post by a hinge device which permits the post to be placed in a horizontal position when not in use. In its useable position, the seat is 40 inches above the deck of the passageway and 23 inches above the decking on which it is supported—there being a 17-inch rise from the passageway deck to the top of the locker on which the seat rested.

Immediately following Mrs. Zukowsky's fall, it was observed that the head of one screw of the supporting flange was broken off, with the body of the screw remaining in the wooden decking. The other flange screw had pulled out of the wood.

Testimony indicated that the defendant husband had removed the flange and supporting post on several occasions, but each time had replaced it with larger steel screws to insure a firm connection. Shortly prior to this accident, plaintiff husband had folded the seat against the bulkhead to obtain access to the supporting locker, but he had replaced it in its position for use.

There is no certainty as to the cause of the collapse of the seat. Experts testified concerning what may have happened. For example, if Mrs. Zukowsky lifted up on the seat, the telescoping joint of the post would separate upon a rise of 2 inches. However, if the seat were improperly assembled by reason of the post joint meeting flush instead of telescoping, the resulting angle of the seat (the inboard portion of the seat would be about 2 inches higher than the outboard side attached to the bulkhead) would be quite noticeable to a person sitting thereon. The breaking of the screw and the pulling from the wood of the other screw indicates a side or angle force incompatible with the downward pressure created by the weight of the person using the seat. Despite the varying theories of the experts, there is testimony from which a jury could find negligence of the defendants in either failing to properly set the supporting post in a telescoped position or failing to properly inspect and maintain the supporting flange at its connection with the deck.

The only evidence of conduct of the plaintiff which could be considered as having contributed to the accident is her sudden turn on the seat, accompanied by the possibility that she kicked the supporting post while turning.

The trial court instructed the jury on negligence, contributory negligence, and comparative negligence.[1] We are in accord with the decision of the Court of Appeals that there was not sufficient evidence of contributory negligence to support a contributory negligence instruction and that, lacking evidence of contributory negligence, a comparative negligence instruction should not have been given.

Defendant, having injected the contributory and comparative negligence elements into the instructions, now contends that any error in these instructions was rendered moot by the defense verdict. This contention is based upon *Nehrbass v. Bullan,* 169 Wash. 377, 379, 13 P.2d 482 (1932), where we said:

> If the charge of negligence is refuted by the jury's verdict, then the question of contributory negligence

---

[1]As the accident occurred in the waters of Puget Sound, the substantive law to be applied is that which would have been applicable had the action been brought in the admiralty court. 28 U.S.C. § 1333. *Scudero v. Todd Shipyards Corp.,* 63 Wn.2d 46, 385 P.2d 551 (1963). In applying that law, the rules of pleading, practice and evidence are those of this court. *Madruga v. Superior Court,* 346 U.S. 556, 98 L. Ed. 290, 74 S. Ct. 298 (1954); *Red Cross Line v. Atlantic Fruit Co.,* 264 U.S. 109, 44 S. Ct. 274, 68 L. Ed. 582 (1924); *Maxwell v. Olsen,* 468 P.2d 48 (Alaska 1970).

Under federal maritime law, no distinction between invitees and licensees is applied in personal injury actions. The applicable standard of care is set forth in *Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 632, 3 L. Ed. 2d 550, 79 S. Ct. 406 (1959):

> We hold that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case.

Plaintiffs, as invited guests on defendants' vessel, were entitled to the benefit of the above rule.

Under the federal maritime doctrine of comparative negligence, contributory negligence, however gross, does not bar recovery, but only affects the amount recoverable. *Scudero v. Todd Shipyards Corp., supra,* and cases cited.

becomes immaterial, and the instructions thereon inconsequential.

In that case, the jury was instructed against considering contributory negligence as to one of three plaintiffs. The jury returned a defense verdict as to all plaintiffs. Under the particular facts, we were able to positively state that the jury had not proceeded beyond the question of defendant's negligence to consider any question of contributory negligence by the other two plaintiffs. The facts presented an exceptional situation.

■ In the case at bar, the exceptional circumstances of *Nehrbass* are not present. We cannot positively state, from the existence of a general verdict for the defendants in this case, that the jury must have determined that defendant was free from negligence and that its verdict was reached sans any influence of the erroneous instructions. The instructions spoke in comparative terms, thus encouraging the jury to consider alleged contributory negligence in conjunction with its consideration of plaintiff's alleged negligence, rather than distinct from and subsequent to that determination. Further, we cannot say with certitude that the jury did not base its conclusion on a finding that, although defendant was negligent, the conjectured negligence of plaintiff was an independent intervening cause which released defendant from liability. Under these circumstances, the rule that it is prejudicial error to instruct a jury on an issue not raised in the evidence applies. *Jablinsky v. Continental Pac. Lines, Inc.*, 58 Wn.2d 702, 364 P.2d 793 (1961), and cases cited therein; *Tergeson v. Robinson Mfg. Co.*, 48 Wash. 294, 93 P. 428 (1908); *see generally* Wiehl, *Instructing a Jury in Washington*, 36 Wash. L. Rev. 378 (1961). The instructions on contributory and comparative negligence constitute reversible error.

Plaintiffs are entitled to a new trial at which the jury should consider only the issues of defendants' negligence, proximate cause, and damages. However, two further matters require our attention, without which we would merely

affirm the Court of Appeals by the simple statement that the petition for review had been improvidently granted.

The trial court refused plaintiffs' requested instruction on res ipsa loquitur.[2] The Court of Appeals agreed on the basis that a necessary element of that doctrine is not present. We agree that the instruction should not have been given, but for a different reason. In discussing our conclusion on this point, we reexamine the applicability and procedural effect of the doctrine. These issues are questions of law. *See Nelson v. Murphy*, 42 Wn.2d 737, 258 P.2d 472 (1953).

We are concerned with a phrase born to the law of torts in 1863. *Byrne v. Boadle*, 159 Eng. Rep. 299, 2 H. & C. 722 (1863). Literally translated, the words mean "the thing itself speaks," and as first used by courts they meant nothing more than that the particular manner and circumstances of an accident might "speak" sufficiently to support an inference of negligence by the trier of fact, enabling the injured plaintiff to avoid nonsuit on that issue. Thus, the phrase initially expressed a common-sense recognition of the potential efficacy of circumstantial evidence. Unfortunately, in the generations since the concept was first enshrined in Latin, the phrase has developed an almost impenetrable crust.

From that casual utterance, dignified and magnified by the cloak of the learned tongue, there has grown by a most extraordinary process the "doctrine" of res ipsa

---

[2]The requested instruction reads: "It is for you the jury to determine whether the manner of injuries sustained by Crystal Zukowsky, and the attendant circumstances connected therewith, are of such a character as would in your judgment, warrant an inference that the injury would not have occurred had due diligence in care been exercised by the defendant.

"The rule is that when an agency or instrumentality which produces injury is under the control of a defendant or persons under defendant's supervision or control and the injury which occurred would ordinarily not have resulted if those in control had used proper care, then, in the absence of satisfactory explanation, you are at liberty to infer, though you are not required to so infer, that the defendant was at some point negligent and the negligence produced the injury complained of by the plaintiffs."

loquitur. It is a thing of fearful and wonderful complexity and ramifications, and the problems of its application and effect have filled the courts of all our states with a multitude of decisions, baffling and perplexing alike to students, attorneys and judges.

Prosser, *Res Ipsa Loquitur in California*, 37 Calif. L. Rev. 183 (1949).

We in Washington have not been spared this development. It would be unwieldy and of little use to attempt a complete review of our prior case law on the subject. However, some discussion is necessary to explain our conclusions: first, that res ipsa loquitur is applicable in this case; and, second, that an instruction on the doctrine was properly refused.

We first deal with the applicability of res ipsa loquitur. In prior cases[3], we have made use of a formula first stated by Wigmore (4 Wigmore, Evidence § 2509 (1st ed. 1905), repeated in 9 Wigmore, Evidence § 2509 (3d ed. 1940)) and set forth by Prosser as the "conditions usually stated." (Prosser, Torts § 42 (2d ed. 1941) at 201, and § 39 (3d ed. 1964) at 218.)

> Further proof of negligence is not essential to take a case to the jury or to overcome challenges to the sufficiency of the evidence where (1) the accident or occurrence producing the injury is of a kind which ordinarily does not happen in the absence of someone's negligence, (2) the injuries are caused by an agency or instrumentality within the exclusive control of the defendant, and (3) the injury-causing accident or occurrence is not due to any voluntary action or contribution on the part of the plaintiff.

*Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.,* 62 Wn.2d 351, 359, 382 P.2d 518 (1963).

Dean Prosser has criticized this statement of conditions:

> With this statement in our greatest legal text, res ipsa loquitur was reduced to a formula—a catchword easy to

[3]*Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.,* 62 Wn.2d 351, 382 P.2d 518 (1963). *Accord: Miles v. St. Regis Paper Co.,* 77 Wn.2d 828, 467 P.2d 307 (1970); *Douglas v. Bussabarger,* 73 Wn.2d 476, 438 P.2d 829 (1968).

repeat as a substitute for consideration of the evidence. Unhappily the proof of facts by facts is not capable of reduction to a formula; it has an inconvenient habit of depending always upon the facts. Text writers have much to answer for in this world. The strict and literal application of Wigmore's formula has led to such absurd results as the Rhode Island case in which, in the defendant's department store, the plaintiff sat down in a chair that collapsed, and a directed verdict for the defendant was affirmed upon the ground that both "user" and "control" of the chair were in the plaintiff "at the time of the injury."

(Footnote omitted.) Prosser, *Res Ipsa Loquitur in California*, 37 Calif. L. Rev. 183, 187 (1949).

The comment by Dean Prosser is apropos, as here the Court of Appeals held that the third element of the Wigmore formula is not satisfied in that Mrs. Zukowsky's turning on the seat constituted "voluntary action or contribution" by plaintiff. There is no indication that plaintiff's conduct was anything other than a reasonable, normal, natural and foreseeable act. Nonetheless, under a strict and literal application of the third element in the formula, Mrs. Zukowsky is not entitled to the benefit of res ipsa loquitur. Reason importunes a contrary result; so we reexamine the formula.

■ When are the circumstances of an occurrence sufficient to support a reasonable inference of negligence against a particular defendant? We have long recognized that the answer to this question can only be determined in the context of each case. *E.g., Dalton v. Selah Water Users' Ass'n*, 67 Wash. 589, 122 P. 4 (1912); *Morner v. Union Pac. R.R.*, 31 Wn.2d 282, 196 P.2d 744 (1948). However, some generalities can be gleaned from our cases. The most fundamental of these is that the inference of negligence must be legitimate. That is, the distinction between what is mere conjecture and what is reasonable inference from the facts and circumstances must be recognized. *Hufford v. Cicovich*, 47 Wn.2d 905, 290 P.2d 709 (1955). Thus, it is not enough that plaintiff has suffered injury or damage, for such things may result without negligence. It is necessary that the

manner and circumstances of the damage or injury be of a kind that do not ordinarily happen in the absence of someone's negligence. *E.g., Anderson v. Harrison,* 4 Wn.2d 265, 103 P.2d 320 (1940); *Haydon v. Bay City Fuel Co.,* 167 Wash. 212, 9 P.2d 98 (1932).

In *Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.,* 62 Wn.2d 351, 360, 382 P.2d 518 (1963), we itemized three such situations:

> ·(1) When the act causing the injury is so palpably negligent that it may be inferred as a matter of law, *i.e.,* leaving foreign objects, sponges, scissors, etc., in the body, or amputation of a wrong member; (2) when the general experience and observation of mankind teaches that the result would not be expected without negligence; and (3) when proof by experts in an esoteric field creates an inference that negligence caused the injuries.

*Accord, Pederson v. Dumouchel,* 72 Wn.2d 73, 431 P.2d 973 (1967).

Of course, to be relevant, the evidence must support a legitimate inference that *defendant* was negligent. This is generally reflected in the requirement that the instrumentality which caused the damage or injury be in the actual or constructive control of defendant. *E.g., Hogland v. Klein,* 49 Wn.2d 216, 298 P.2d 1099 (1956). To satisfy this requirement, the degree of control must be exclusive to the extent that it is a legitimate inference that defendant's control extended to the instrumentality causing injury or damage. In its proper sense, this "condition" states nothing more than the logical requirement that "the apparent cause of the accident must be such that the defendant would be responsible for any negligence connected with it." Prosser, *Res Ipsa Loquitur in California,* 37 Calif. L. Rev. 183, 201 (1940).

A claim of negligence based upon circumstantial evidence, like one based on direct evidence, is subject to defenses. On occasion, an affirmative defense such as assumption of the risk or contributory negligence may be shown by plaintiff's evidence. If so, plaintiff's evidence refutes his case by showing his own "voluntary action or contribution"

in the event. It is in this context that the third-stated "condition" to application of res ipsa loquitur has appropriate meaning. But it is erroneous to read into those words the broader notion that plaintiff's evidence must not only support a reasonable inference that defendant was negligent, but also preclude the possibility that defendant can establish a defense based on plaintiff's conduct. *See Miles v. St. Regis Paper Co.*, 77 Wn.2d 828, 467 P.2d 307 (1970). Thus, it is incorrect to speak of evidence of plaintiff's conduct as proof of lack of defendant's negligence. If, at the close of plaintiff's case or after all evidence is in, it can be said as a matter of law that plaintiff is precluded from recovery by his own "voluntary action or contribution" or by operation of some other defense, then plaintiff's case should not go to the jury, whatever his direct or circumstantial evidence of negligence of defendant. But this result does not obtain because sufficient proof of defendant's negligence has not been presented. It occurs because the evidence wholly refutes plaintiff's right to recover for any such negligence.

Here, Mrs. Zukowsky has shown that she was injured when a helm seat on which she was sitting collapsed. In the general experience of mankind, the collapse of a seat is an event that would not be expected without negligence on someone's part. Plaintiff's evidence showed that defendant was in ownership and control of the boat and had removed and replaced this helm seat several times. This evidence was sufficient to support a legitimate inference that defendant's control extended to the instrumentality causing injury. We find nothing so unreasonable or abnormal in Mrs. Zukowsky's use of the seat as to support a claim of contributory negligence, or prevent the inference of defendant's negligence from arising in the first instance. *Accord, Rose v. Melody Lane*, 39 Cal. 2d 481, 247 P.2d 335 (1952).

Plaintiffs' evidence as to the manner and circumstances of this event are sufficient to support a reasonable inference that defendant was negligent. Since that inference was not refuted as a matter of law, plaintiffs were entitled

to the benefits of the inference of negligence arising from the circumstances.

Having determined that res ipsa loquitur applies, there remains the question of its procedural effect. In meeting this question, we enter what has been called "a quagmire of confusion which, taken in the aggregate, makes no conspicuous amount of sense." Dean Prosser lists Washington as one of "a dozen or more jurisdictions in which the language used by the courts is so uncertain or conflicting that it is virtually impossible to say what position they have taken as to the effect of res ipsa loquitur." Prosser, *The Procedural Effect of Res Ipsa Loquitur*, 20 Minn. L. Rev. 241, 251 (1936).[4] In the time since that assessment, no definitive pattern has emerged in the cases. In 1948, after an extensive review of prior case law, we stated that the inference of negligence in a res ipsa case has the effect of "casting upon the defendant the duty to come forward with an exculpatory explanation, rebutting or otherwise overcoming the presumption or inference of negligence on his part." *Morner v. Union Pac. R.R.*, 31 Wn.2d 282, 291, 196 P.2d 744 (1948). This language could support the conclusion that res

---

[4]Prosser, *The Procedural Effect of Res Ipsa Loquitur*, 20 Minn. L. Rev. 241, 253 n.66 (1936):

The cases are in confusion. Beall v. City of Seattle, (1902) 28 Wash. 593, 69 Pac. 12, 61 L. R. A. 583, 92 Am. St. Rep. 892 (presumption ?); Anderson v. McCarthy Dry Goods Co., (1908) 49 Wash. 398, 95 Pac. 325, 16 L. R. A. (N.S.) 931, 126 Am. St. Rep. 870 (inference ?); Graaf v. Vulcan Iron Works, (1910) 59 Wash. 325, 109 Pac. 1016 (inference); Gibson v. Chicago, M. & St. P. Ry., (1911) 61 Wash. 639, 112 Pac. 919 (burden of proof shifted ?); Wodnik v. Luna Park Amusement Co., (1912) 69 Wash. 638, 125 Pac. 941, 42 L. R. A. (N.S.) 1070 (inference); Briglio v. Holt & Jeffery, (1915) 85 Wash. 155, 147 Pac. 877 (burden of proof not shifted; language indicating both presumption and mere permissible inference); Poth v. Dexter Horton Estate, (1926) 140 Wash. 272, 248 Pac. 374 (burden of proof shifted ?); Johnson v. Grays Harbor R. & Light Co., (1927) 142 Wash. 520, 253 Pac. 819 (burden of proof shifted ?); Highland v. Wilsonian Inv. Co., (1932) 171 Wash. 34, 17 P.(2d) 631 (inference). It seems clear that the Washington court never has seriously considered the question.

*See also* Comment, *The Doctrine of Res Ipsa Loquitur in Washington*, 13 Wash. L. Rev. 215 (1938).

ipsa shifts either the burden of going forward with the evidence or the burden of persuasion. We pointed out in *Morner* that no fixed rule of universal applicability is possible, resort being necessary to the facts and circumstances of each case. Then in 1950, we said that res ipsa does not shift the burden of proof, but is an inference which places on the defendant the duty of coming forward with exculpatory evidence. *Covey v. Western Tank Lines*, 36 Wn.2d 381, 218 P.2d 322 (1950). Nine years later in *Chase v. Beard*, 55 Wn.2d 58, 67, 346 P.2d 315 (1959), we stated:

> In cases in which the so-called "doctrine" is applicable, its primary purpose is to withstand the challenge of the defendant's motion for a nonsuit. It did so here. There was no necessity for any instruction.

This prompted one writer to state that we had finally "put the so-called 'doctrine' in its proper place." Note, 35 Wash. L. Rev. 249, 252 (1960). Since then, two variant lines of authority have emerged. In one line of cases, we have said that jury instruction on res ipsa loquitur should be given. *E.g., Miles v. St. Regis Paper Co., supra; Douglas v. Bussabarger*, 73 Wn.2d 476, 438 P.2d 829 (1968); *Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.*, 62 Wn.2d 351, 382 P.2d 518 (1963). In the other, we have applied the reasoning of *Chase v. Beard, supra*, that res ipsa jury instructions are not necessary. *E.g., Ball v. Mudge*, 64 Wn.2d 247, 391 P.2d 201 (1964); *Dabroe v. Rhodes Co.*, 64 Wn.2d 431, 392 P.2d 317 (1964); *also see* WPI 22.01 (1967).

It has been suggested that an underlying distinction in the cases can be found in whether the causal connection is shown by direct evidence (no instruction) or by circumstantial evidence (instruction should be given); a distinction which the author considers tenuous.[5]

■ There is contradiction between a general denial of res ipsa instructions on the ground that a specific cause has been identified and our other holdings that the benefit of res ipsa is not removed by allegation and proof of specific

[5]Stritmatter, *Presumptions in the Washington Supreme Court*, 5 Gonzaga L. Rev. 198, 224-32 (1970).

acts of negligence. *E.g., Bolander v. Northern Pac. Ry.*, 63 Wn.2d 659, 388 P.2d 729 (1964); *Morner v. Union Pac. R.R., supra; Mahlum v. Seattle School Dist. 1*, 21 Wn.2d 89, 149 P.2d 918 (1944). Causation is, of course, a necessary element to a prima facie case in tort; but it is distinct from the element of negligence to which res ipsa applies. This is especially true in light of our recent holdings that causation is a question of fact, with foreseeability and its policy considerations being treated in line with defendant's duty of care. *Wells v. Vancouver*, 77 Wn.2d 800, 467 P.2d 292 (1970); *Rikstad v. Holmberg*, 76 Wn.2d 265, 456 P.2d 355 (1969).

When the manner and circumstances of an event causing injury or damage provide circumstantial evidence giving rise to a legitimate inference of negligence, the plaintiff should not be denied the effect of that evidence for the sole reason that he has also provided direct evidence of a specific cause. Of course, the permissible scope of the inference may be limited where plaintiff's evidence of a specific cause is conclusive as a matter of law. An analysis which may explain most of our prior cases is based on the strength of the plaintiff's evidence. *E.g.*, when plaintiff's direct evidence of a specific cause shows defendant negligent as a matter of law, then the res ipsa inference is unnecessary; plaintiff is entitled to a directed verdict. Conversely, when plaintiff's evidence shows conclusively that defendant is not responsible, any inference of negligence is refuted and defendant is entitled to a nonsuit. At these extremes res ipsa is denied, not because of the type of proof by which a specific cause is shown, but by reason of the effect of this showing on the issue of negligence. It is thus seen that the type of evidence of causation is not a correct basis of distinction as to the procedural effect of res ipsa in a given case.

■ Once the trial court has determined as a matter of law that res ipsa is applicable, he must then determine the procedural effect. In a given case, the procedural effect of res ipsa loquitur depends upon the strength of the inference to be drawn from the circumstances in evidence. *Nopson v.*

*Wockner,* 40 Wn.2d 645, 245 P.2d 1022 (1952); Prosser, Torts § 40 at 234 (3d ed. 1964). The strength of the inference varies not only according to the manner of the particular occurrence, but also with the standard or degree of care which defendant owed to plaintiff in connection with the occurrence. Circumstances may strengthen the inference in another sense, in that the situation may give rise to policy considerations placing an added explanatory burden on the defendant. Such considerations may arise from the relationship of the parties, the nature of the occurrence and the relative access to explanatory information. In summary, the procedural effect of a res ipsa inference will in each case be a consequence of its strength which, in turn, depends upon the degree of probability of its truth together with the appropriate, stated policy considerations.

The potential effects of the res ipsa inference are the same as those of other circumstantial evidence. In the usual case, where defendant owes a duty of ordinary care, where the inference of negligence is but one of the inferences that reasonably could be drawn from the evidence and where there is no further reason for placing an added burden of explanation on the defendant, the effect of res ipsa is as stated in Prosser, Torts § 40 at 232 (3d ed. 1964):

> In the ordinary case, absent special circumstances or some special relation between the parties, the great majority of the American courts regard res ipsa loquitur as nothing more than one form of circumstantial evidence. . . . This means that the inference of negligence to be drawn from the circumstances is left to the jury. They are permitted, but not compelled to find it. The plaintiff escapes a nonsuit, or a dismissal of his case, since there is sufficient evidence to go to the jury; but the burden of proof is not shifted to his [defendant's] shoulders, nor is any "burden" of introducing evidence cast upon him, except in the very limited sense that if he fails to do so, he runs the risk that the jury may, and very likely will, find against him.

(Footnotes omitted.)

Generally, res ipsa loquitur provides nothing more than a permissive inference. The facts giving rise to it should be

submitted as is any other circumstantial evidence. A second possible effect occurs if the strength of the inference of defendant's negligence is such that, absent exculpatory evidence by defendant, plaintiff is entitled to a directed verdict on the issue. In such circumstances, res ipsa has the effect of creating a presumption which shifts the burden of producing evidence to the defendant. A third possible effect occurs when the inference of negligence is so strong that defendant must show by a preponderance of the evidence that he was not negligent or lose on the issue, thus giving res ipsa the effect of a legal presumption which shifts the burden of persuasion. Finally, the circumstantial evidence may be such that the negligence of defendant is shown to exist as a matter of law. In that case, res ipsa has the effect of a conclusive presumption. Each of these potential effects finds a counterpart in the Washington Pattern Jury Instructions.[6]

In the case at bar, defendant owed to plaintiffs a duty of reasonable care under the circumstances. *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 3 L. Ed. 2d 550, 79 S. Ct. 406 (1959). The manner and circumstances of the accident support the reasonable inference

---

[6] 6 Wash. Prac., Washington Pattern Jury Instructions (1967). In ordinary cases, the proper effect is adequately conveyed by the pattern instruction on circumstantial evidence, WPI 1.03, with a slight modification to conform with our statement in *Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.*, 62 Wn.2d 351, 382 P.2d 518 (1963).

WPI 1.03 Circumstantial Evidence

Evidence is of two kinds—direct and circumstantial. Direct evidence is that given by a witness who testifies directly of his own knowledge concerning facts to be proved. Circumstantial evidence consists of proof of facts or circumstances which according to the common experience of mankind [and/or other source of legitimate inference] give rise to a reasonable inference of the truth of the fact sought to be proved.

One kind of evidence is not necessarily more or less valuable than the other.

Appropriate instructions are also available to convey a presumption which affects the burden of going forward with the evidence (WPI 24.02 or 24.03), or which shifts the burden of proof on the issue of negligence (WPI 24.04 or 24.05), or which is conclusive (WPI 24.01).

that defendant breached his duty of care and was negligent. As we noted at the beginning, the inference of negligence is not the only inference that may be legitimately drawn from this evidence; nor does that inference, on its face, stand out as having particular strength under the facts of this case. There is nothing in the relationship between these parties from which it can be said that defendant has any greater explanatory burden than that which normally exists. Thus, we have here an "ordinary case." The jury may, but is not compelled to, accept the inference of negligence that arises from the circumstances. Defendant runs the risk of losing on this issue if he fails to produce evidence showing that he was not negligent, but he is under no legal burden to do so. Plaintiff's case is sufficient to survive a motion for nonsuit, and plaintiff is entitled to an instruction informing the jury on circumstantial evidence.

Res ipsa is properly treated the same as other circumstantial evidence in instructions to the jury. The remaining question is whether, instead of or in addition to these instructions, the so-called "res ipsa instruction" should be given. We are of the opinion that such instructions should not be given. To do so is to emphasize one particular inference over others which may be, and usually are, in the case. When added to other, general instructions which inform the jury of what they may or should do with the evidence before them, such particularized instructions are unnecessary and redundant. We agree with the statement that "in keeping with the modern thinking on the subject, giving slanted or formula instructions should be avoided wherever possible. They should be given only where a general instruction would clearly be inadequate or would confuse or mislead the jury." Wiehl, *Instructing a Jury in Washington,* 36 Wash. L. Rev. 378, 385 (1961). *See Barracliff v. Maritime Overseas Corp.,* 55 Wn.2d 695, 701, 349 P.2d 1080 (1960); *DeKoning v. Williams,* 47 Wn.2d 139, 286 P.2d 694 (1955); *O'Brien v. Seattle,* 52 Wn.2d 543, 327 P.2d 433 (1958). The reasoning behind this conclusion is well stated by Wiehl, *supra* at 401:

Proposed instructions advising the jury that it may or should consider certain specific evidence in arriving at certain conclusions or findings or in arriving at a verdict should ordinarily be rejected. They are often proposed in negligence cases where one party wishes to call attention to certain facts in evidence as indicative of distance or speed. While such instructions may be legally correct and, if worded properly, may not technically be a comment on the evidence, they approach "comment" since they intimate to the jury that the judge thinks that particular evidence commands special attention or has more weight than the other evidence. They tend to "highlight" or "pinpoint" certain evidence to the detriment of other evidence in the case. In that way they do constitute "comment." Such instructions are ordinarily needless since the jury will consider all evidence not stricken by the court, and it is the attorneys' function to (and they undoubtedly will) call attention to such evidence in their argument. The only time they should be given is when some other instruction or some special quirk in the case may lead the jury to believe that it should ignore such evidence, even though not specifically told to do so.

Plaintiff excepted to and here challenges instruction No. 3 as given. That instruction states:

Neither negligence nor contributory negligence can be assumed merely because the evidence shows that an accident happened.

The instruction is erroneous in this case. First, as there is no substantial evidence of contributory negligence, the instruction should not refer to it. Second, the above instruction, as stated, could amount to a "special quirk" spoken of by Wiehl, *supra,* which would occasion a counterbalancing "pinpoint" instruction on the res ipsa inference. A more appropriate instruction would tell the jury in substance that negligence cannot be assumed merely because damage or injury has occurred, but must be proved, and that such proof may be shown either by direct evidence or by reasonable inference from the manner and circumstances of the event causing injury or damage.

On remand, an instruction conveying this substance should be given to avoid any need of a "balancing" instruc-

tion which highlights and emphasizes the res ipsa loquitur inference.

We have said in the past that there is no magic in the words "res ipsa loquitur." *Chase v. Beard,* 55 Wn.2d 58, 346 P.2d 315 (1959); *Vogreg v. Shepard Ambulance Serv., Inc.,* 47 Wn.2d 659, 289 P.2d 350 (1955). The considerations properly called to mind by that term should be treated for what they are: matters pertaining to one type of circumstantial evidence and its procedural effect.

Plaintiffs also assign error to the ruling of the trial court permitting leading questions during cross-examination of the defendant who had been called as a witness by the plaintiffs.

■ When a party is called as a witness by the adverse party, the witness is adverse, thus permitting the calling party the leeway of leading questions on direct examination. Conversely, on cross-examination of that witness by his own counsel, the witness remains adverse to the calling party and leading questions are not permitted. Jones on Evidence, § 903 (5th ed. 1958) at 1690. *See Bishop v. Averill,* 17 Wash. 209, 49 P. 237, 50 P. 1024 (1897).

On the remaining issues we are in accord with the opinion of the Court of Appeals.

The cause is remanded for a new trial.

HAMILTON, C.J., STAFFORD and SHARP, JJ., concur.

HILL, J. Pro Tem., concurs in the result.

FINLEY, J. (concurring in the result)—I concur with the majority in remanding this case for a new trial because under the circumstances of this case, instructing the jury on contributory and comparative negligence was reversible error. I agree with the views of the majority, as I understand them, that the circumstances of negligence in this case were such as to merit an instruction to this effect, and to take the case past a nonsuit, to the jury. Such an instruction, and withholding instruction No. 3 on remand would, as stated by the majority, obviate any necessity for

giving an instruction on "res ipsa loquitur" labeled as such. I cannot agree with the majority that the res ipsa instruction, even labeled as such, should never be given in any case because it seems to me the propriety of such an instruction must, of necessity, be judicially determined on a case-by-case basis.

HUNTER, J. (concurring in the result)—I concur in the result of the majority but disagree with its disposition of the doctrine of res ipsa loquitur. I am in agreement with the statement of Justice Rosellini in his dissent:

> I find it impossible to conceive of the doctrine [res ipsa loquitur] having any value to the jury unless the jury is instructed upon it. Where certain facts are found by the jury, the law permits it to draw an inference. But, unless the jury is told that if it finds these facts it can draw this inference, the jury itself is left in a quagmire of confusion.

(Footnote omitted.)

ROSELLINI, J. (dissenting)—In my opinion, this case is one in which any verdict for the plaintiff must rest upon speculation and conjecture. Putting aside any question of possible contributory negligence on the part of the plaintiff, we are nevertheless confronted with the fact that the failure of the chair could well have been due to faulty design, faulty manufacture, or latent defects in the materials. All of these are possibilities, if none is a probability. For none of these causes would the boat owner be responsible, since he is not an insurer.

To me, the conclusion is inevitable that the jury had nothing to proceed upon except several conjectural theories, under one or more of which the defendant would be liable and under at least one of which he would not be liable. Under any view of res ipsa loquitur, it does not come into play unless the evidence shows that the occurrence in question is one which does not *ordinarily* happen unless the *defendant* has been negligent. Since there was no proof that an accident of this kind does not ordinarily happen unless the boat *owner* has been negligent, I do not see how

any inference of negligence can arise from the happening of the accident.

But, whether or not the jury is instructed on res ipsa loquitur, it is invited to speculate if it must render a verdict on such insubstantial evidence. If there is no evidence that the accident was more probably caused by one thing than another (and it seems to me that expert testimony is needed to establish causation in a case of this kind), the case should not go to the jury. *Mason v. Turner,* 48 Wn.2d 145, 291 P.2d 1023 (1956).

The jury recognized that there was no proof that the defendant's negligence, if there was such negligence, caused this accident. It gave the proper verdict and that verdict was properly upheld by the trial court when it entered judgment upon it.

The doctrine of res ipsa loquitur is not rescued from the alleged quagmire of confusion which supposedly surrounds it by a decision which makes it applicable to the factual situation presented here. I would keep my judicial boots out of that quagmire until we have before us a case in which the doctrine is legitimately and necessarily involved.

Upon the merits of that question, however, I find it impossible to conceive of the doctrine having any value to the jury unless the jury is instructed upon it. Where certain facts are found by the jury,[7] the law permits it to draw an inference. But, unless the jury is told that if it finds these facts it can draw this inference, the jury itself is left in a quagmire of confusion.

---

[7] Is the accident one which does not ordinarily happen without negligence? Was the instrumentality which caused the accident under the control of the defendant?

(Here, the instrumentality was under the control of the defendant as far as its maintentance was concerned but not as far as its manufacture was concerned. Since the accident was not shown to have been more probably caused by defective maintenance than by defective manufacture, the jury could not properly consider the question.)

The present case, in my judgment, should be quietly remanded with directions to reinstate the verdict.

HALE, J., concurs with ROSELLINI, J.

Petition for rehearing denied November 5, 1971.